**PURPLE ORCHID, INC., Appellant,**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 2, 1998.

Decided Dec. 3, 1998.

As Amended Dec. 14, 1998.

Michael S. Durst, Philadelphia, for appellant.

James A. Saylor, Philadelphia, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

The Purple Orchid (Licensee) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) affirming the decision of the Pennsylvania Liquor Control Board (Board) finding that Licensee vio-

1. Act of April 2, 1951, P.L. 90, *as amended*, 47 P.S. §4-493(10). Section 493 provides in pertinent part:

It shall be unlawful –

* * *

lated Section 493(10) of the Liquor Code [1] and imposing fines in the amount of $1,000.

The relevant facts are not in dispute. On April 11, 1995, Officer Bandy, a liquor control enforcement officer with the Pennsylvania State Police (State Police) entered Licensee's establishment and observed three female dancers. Each dancer removed the upper portion of her costume during her performance. Although none of the dancers removed the bottom portion of their outfits, it appeared to Officer Bandy that each dancer was bare-breasted because the nipple and the areola of the dancers' breasts were visible even though they were "covered" by "liquid latex" that was brushed on to the areola but was clear and transparent when dry.

Because the dancers appeared to Officer Bandy to be bare-breasted, he issued a citation against Licensee for permitting lewd, immoral or improper entertainment on the licensed premises in violation of Section 493(10) of the Liquor Code. Licensee appealed the citation to an Administrative Law Judge (ALJ). The ALJ found the above facts and concluded that the covering of a dancer's breasts with a covering that is transparent when dry was the same as exposing the entire breasts and, therefore, under our decision in *Pennsylvania Liquor Control Board v. J.P.W.G.*, 88 Pa.Cmwlth. 385, 489 A.2d 992 (Pa.Cmwlth.1985), he was constrained to find that Licensee permitted improper entertainment on its premises on April 11, 1995. He imposed a fine of $1,000 for Licensee's violation. Licensee appealed to the Board which affirmed and Licensee appealed to the trial court.

Before the trial court, Licensee contended that Section 493(10) was both unconstitutionally vague and violated its First Amendment right of freedom of expression; that exposing bare nipples and areolae was no longer lewd and lascivious and that it was the target of selective enforcement by the Board. After a *de novo* hearing, the trial

(10) For any licensee, his servants, agents or employes, except club licensees ... to permit in any licensed premises any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not.

court adopted the ALJ's and the Board's findings of fact and made one additional finding that the testimony clearly established that the other major providers of erotic entertainment in Philadelphia had discarded the use of pasties and instead were using liquid latex. It concluded that Section 493(10) was not unconstitutional and that Licensee failed to establish a case of selective enforcement against it. The trial court then dismissed Licensee's appeal and ordered Licensee to pay a $1,000 fine for violating Section 493(10) of the Liquor Code. This appeal followed.[2]

## I.

■ As before the trial court, Licensee again contends that Section 493(10) violates its rights guaranteed under the United States Constitution. It contends that its due process rights under the Fourteenth Amendment[3] were violated because what is considered "lewd, immoral or improper" entertainment conduct proscribed by Section 493(10) is incapable of being discerned in advance, making this provision unconstitutionally vague. Initially, we note a statute challenged on vagueness grounds is presumed to be constitutional and will not be declared otherwise unless it clearly, palpably and plainly violates the Constitution. *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975). Moreover, "[a]lthough at first blush a law may appear vague on its face and those subject to it without fair notice, however, it may withstand a constitutional challenge if it has been narrowed by judicial interpretation, custom and usage[.]" *Fabio v. Civil Service*

*Commission of Philadelphia,* 489 Pa. 309, 315, 414 A.2d 82, 85 (1980). *See also Ghosh v. Pennsylvania Bureau of Professional and Occupational Affairs,* 702 A.2d 1156 (Pa. Cmwlth.1997). We also note at the outset that "nude dancing," i.e., entertainment where dancers do not wear pasties and/or G-strings, has been consistently held to be a violation of this provision by both the Board and the courts. *See, e.g., J.P.W.G., supra.* Moreover, Licensee obviously knew what conduct fell within that definition by his attempt not to violate the provision by having its dancers "wear" "see-through" pasties.

■ In any event, this exact challenge was made to our Supreme Court in *Tahiti Bar, Inc.,* 395 Pa. 355, 150 A.2d 112 (1959). In holding that the statute was not vague, our Supreme Court reasoned that liquor license actions were civil and administrative in nature rather than criminal, and, therefore, were not subject to the strictness of interpretation that criminal statutes were under the Due Process Clause. It then went on to state:

> Viewing the statutory terms "lewd, immoral or improper" unfettered by the confining interpretive requirements applied to criminal statutes and statutes specifically designed to restrict freedom of speech and expression, are these terms still too vague to conform to the due process requirements of the Fourteenth Amendment? We think not.

\* \* \*

Under the liquor laws of this Commonwealth, licenses have been denied, sus-

---

**2.** In considering Licensee's appeal from an adverse ruling from a trial court, we note that the trial court was required to conduct a *de novo* review and to make its own findings and conclusions. Based upon that *de novo* review, the trial court could sustain, alter, change, modify or amend the Board's action whether or not it made findings which were materially different from those found by the Board. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge,* 536 Pa. 254, 639 A.2d 14 (1994). Accordingly, we base our review on the facts as found by the trial court and our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Capek,* 657 A.2d 1352 (Pa.Cmwlth.1995); *Pennsylvania*

*State Police, Bureau of Liquor Control Enforcement v. R–Lounge, Ltd.,* 166 Pa.Cmwlth. 227, 646 A.2d 609 (Pa.Cmwlth.1994).

**3.** The Fourteenth Amendment to the United States Constitution provides, in pertinent part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

pended or revoked under such provisions as "upon any ... sufficient cause shown" and because the applicant was not a "person of good repute." Even if it were conceded that the term "improper" is too vague to satisfy due process requirements, no such question would arise as to the terms "lewd and immoral." ... We have not so cast ourselves adrift from that code nor are we so far gone in cynicism that the word "immoral" has no meaning for us. Our duty as a court is to uphold and enforce the laws, not seek reasons for destroying them. ... The constitutionality of similar statutes defining crimes in general terms has been upheld by many courts where the general terms used in the particular statute get precision from common standards of morality prevalent in the community. ... Viewed in its entirety, the terminology employed in Section 493 is neither vague nor indefinite and does not violate the due process clause of the Fourteenth Amendment.

*Id.* at 365–67, 150 A.2d at 118–19. Because Section 493(10) of the Liquor Code was not unconstitutionally vague and the Board had consistently interpreted that provision to mean that nude dancing was prohibited, an interpretation known to Licensee and, as a result, Licensee was not denied due process under the Fourteenth Amendment to the United States Constitution.

## II.

Licensee also contends that the Board's policy of prohibiting nude dancing or in not wearing pasties and/or a "G-string" in places where alcohol is served violates the constitutional guarantee of freedom of expression guaranteed by the First Amendment to the United States Constitution.[4] While recognizing that in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the United States Supreme Court held that states did not violate the First Amendment to the United States Constitution by proscribing sexual exhibitions in places that were licensed to serve alcoholic beverages, Licensee argues that decision is no longer valid because of the Supreme Court's more recent decision in *44 Liquormart v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). It contends that it is no longer valid because *LaRue's* rationale for allowing states to ban nude dancing was ancillary to the Twenty-first Amendment's[5] grant to states the power to regulate liquor sales, while in *44 Liquormart,* the Supreme Court, in overturning a ban on liquor price advertising, held that the Twenty-first Amendment "does not qualify the constitutional prohibition against laws abridging the *freedom of speech* embodied in the First Amendment." 517 U.S. at 516, 116 S.Ct. at 1515. (emphasis added). Consequently Licensee maintains that because *LaRue's* rationale was based on the Twenty-first Amendment and that is no longer valid, necessarily, its First Amendment rights as a producer of nude dancing is violated.

Notwithstanding that Licensee has not articulated any message that it is trying to convey, in *44 Liquormart,* the Supreme Court specifically addressed *LaRue,* and although it disavowed its reasoning with respect to the Twenty-first Amendment, it did not disturb its finding that states could prohibit nude dancing. Rather, the Supreme Court stated:

We are persuaded that the Court's analysis in *LaRue* would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment. Entirely apart from the Twenty-first Amendment, the State had ample power to prohibit the sale of alcoholic beverages in inappropriate locations. Moreover, in subsequent cases the Court has recognized that the States' inherent police powers provide ample au-

---

4. The First Amendment to the United States Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

5. The Twenty-first Amendment to the United States Constitution provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

thority to restrict the "bacchanalian revelries" described in *LaRue* opinion regardless of whether alcoholic beverages are involved. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct 2456, 115 L.Ed.2d 504 (1991). As we recently noted: *"LaRue* did not involve commercial speech about alcohol but instead concerned the regulation of nude dancing in places where alcohol is served." *Rubin v. Coors Brewing Co.*, 514 U.S., [476] at 482, n. 2, 115 S.Ct [1585] at 1589, n. 2 [131 L.Ed.2d 532 (1995)].

Licensee argues that statement does not control because some of the sexual conduct in *LaRue* was much more explicit than the topless dancing at issue here.[6] While the above quote from *44 Liquormart* does euphemistically refer to the "bacchanalian revelries" that occurred in *LaRue*, nonetheless, the Supreme Court then goes on to specifically hold that states have ample power to regulate nude dancing in places in which alcoholic beverages are served, notwithstanding they can no longer rely on the Twenty-first Amendment to uphold such a regulation. See also, discussion, *infra.*

6. Aside from nude dancing, the other objectionable conduct occurring at the establishment in *LaRue* was as follows:

Customers were found engaging in oral copulation with women entertainers; customers engaged in public masturbation; .and customers placed rolled currency either directly into the vagina of a female entertainer or on the bar in order that she might pick it up herself. Numerous other forms of contact between the mouths of male customers and areas of female performers were reported to have occurred. Prostitution occurred in and around such licensed premises and involved some dancers. Indecent exposure to young girls, attempted rape, rape itself, and assault officers took place on or immediately adjacent to such premises. 409 U.S. at 111, 93 S.Ct. 390. Nothing in the record indicates such explicit conduct here took place because the testimony centered on the latex pasties. However, we note that one of the dancers in this case testified that she engaged in "floor dancing" and that the latex tore away when she was grabbed.

7. The Ordinance states in relevant part:

1. *A person who knowingly or intentionally in a public place:*
a. engages in sexual intercourse;

Recently, however, our Supreme Court in *Pap's A.M. v. City of Erie*, —— Pa. ——, 719 A.2d 273 (1998), without discussing *LaRue* or *44 Liquormart*, struck down an ordinance prohibiting nude or naked dancing. In *Pap's*, the City of Erie enacted the Ordinance[7] that, among other things, made it a summary offense to appear in a "state of nudity" anywhere or anyplace. Pap's A.M., an operator of an adult establishment known as "Kandyland," challenged the constitutionality of the ordinance because it violated the rights of its entertainers' freedom of expression. It was not a licensed liquor establishment but was what is commonly known as a "bottle club" where alcoholic beverages are not served but patrons can bring their own. The entertainers at Kandyland were women who before the Ordinance was enacted performed nude but, under the Ordinance, were now, at a minimum, required to wear "pasties" and a "G-string."

In reversing the ban on nude dancing, our Supreme Court's analysis of *Pap's* challenge, as did ours, centered on what could be gleaned from the various opinions that the United States Supreme Court issued in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct.

b. engages in deviate sexual intercourse as defined by the Pennsylvania Crimes Code;
c. appears in a state of nudity, or
d. fondles the genitals of himself, herself or another person commits Public Indecency, a Summary Offense.
2. "Nudity" means the showing of the human male or female genital (sic), pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple; the exposure of any device, costume, or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device simulates and gives the realistic appearance of nipples and/or areola.
3. "Public Place" includes all outdoor places owned by or open to the general public, and all buildings and enclosed places owned by or open to the general public, including such places of entertainment, taverns, restaurants, clubs, theaters, dance halls, banquet halls, party rooms or halls limited to specific members, restricted to adults or to patrons invited to attend, whether or not an admission charge is levied.

2456, 115 L.Ed.2d 504 (1991).[8] In that case, the Supreme Court upheld an Indiana statute that prohibited "nudity in public" and required dancers to wear "pasties" and "G-strings." In addressing *Barnes*, our Supreme Court held that only one principle could be gleaned from that decision which was that because nude dancing portrayed an erotic message, it was expressive conduct and was entitled to some quantum of protection under the First Amendment.[9] Because it was entitled to First Amendment protection, our Supreme Court determined that unless the Ordinance was content-neutral, it was required to apply the "onerous strict scrutiny test." In addressing whether the ordinance was content-neutral or suppressing free expression, even though the Supreme Court in *Barnes* upheld Indiana's ban on public nudity, because that decision was hopelessly fragmented in its reasoning, our Supreme Court decided that *Barnes* has no precedential effect on whether total nudity violated the First Amendment to the United States Constitution and that it would have to do its own analysis of whether the Ordinance suppressed free expression.[10]

While our Supreme Court acknowledged that one of the purposes of the Ordinances was to combat negative secondary effects that came from those types of activities which would be content-neutral, they also determined that inextricably bound up with this stated purpose was an unmentioned purpose that directly impacted on the freedom of expression: that purpose was to impact negatively on the erotic message of the dancer. The Court then adopted Justice White's reasoning expressed in his dissenting opinion in *Barnes* that:

> [I]t cannot be [said] that the statutory prohibition is unrelated to expressive conduct. Since the State permits the dancers to perform if they wear pasties and G-strings but forbids nude dancing, it is precisely because of the distinctive, expressive content of the nude dancing performances at issue in this case that the State seeks to apply the statutory prohibition. It is only because nude dancing performances may generate emotions and feelings of eroticism and sensuality among the spectators that the State seeks to regulate such expressive activity, apparently on the as-

**8.** This court had adopted Justice Souter's rationale that the ordinance against public nudity combated secondary effects inherent in nude dancing because "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments in the narrowest grounds.' *Marks v. United States*, 430 U.S. 188, 193 [97 S.Ct. 990, 51 L.Ed.2d 260] (1977) (citing *Gregg v. Georgia*, 428 U.S. 153 [96 S.Ct. 2909, 49 L.Ed.2d 859] (1976)). Applying the *Marks* rule, Justice Souter's opinion articulates the holding of the Court since it shares with the majority of the Justices a common underlying approach and, since Justice Souter ruled on the narrowest ground, his concurrence therefore is the law." *Pap's A.M. v. City of Erie*, 674 A.2d 338, 343 (Pa.Cmwlth.1996).

**9.** At least eight justices agreed that First Amendment protection extends to nude dancing, but they differed in their approaches to defining that protection. However, the exact amount of protection to nude or topless dancing enjoys has not been clearly delineated. The plurality opinion in *Barnes* stated that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment though ... marginally so." *Barnes*, 501 U.S. at 565, 111 S.Ct. at 2460. The *Barnes* dissent only indicates that "nude dancing per-

formed as entertainment enjoys First Amendment protection." *Id.* 501 U.S. at 589, 111 S.Ct. at 2472. Justice Scalia concurred in the result, but wrote separately because he believed the statute regulated conduct, not expression. Justice Souter also wrote separately because he believed that the state's interest was to combat secondary effects, an interest unrelated to the suppression of expression.

**10.** Justice Castille, joined by Justice Zappala, in a dissenting opinion in *Pap's*, would have found that a majority holding could be cobbled together from the various opinions in *Barnes* that the prohibition against nude dancing did not necessarily violate the First Amendment to the United States Constitution. Nonetheless, the dissenters would have struck down the ordinance under Article I, Section 7 of the Pennsylvania Constitution that provides " ... The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject ... " Purple Orchid cites us to *Cleveland's P.M on the Boardwalk v. Ohio Liquor Control*, 1997 WL 25522 (Ohio App.), *petition for allowance of appeal denied*, 78 Ohio St.3d 1516, 679 N.E.2d 311 (1997) (prohibitions on topless dancing prohibited by Ohio Constitution free speech provisions), but that opinion is unpublished.

sumption that creating such thoughts and ideas in the minds of the spectators may lead to increased prostitution and the degradation of women. But generating thoughts, ideas, and emotions is the essence of communication. Also adopting Justice White's view that strict scrutiny should apply, finding that the Ordinance was not narrowly tailored to address the acknowledged secondary effects, it then went on to hold that portion of the Ordinance that struck down full public nudity.[11]

With that in mind, we have to determine whether *Pap's* holding is at variance with the Board's policy to cite licensed liquor establishments for permitting "lewd, immoral or improper" entertainment unless the entertainer is wearing pasties and G-strings and similarly impermissibly violates Licensee's freedom of expression. In making that analysis, we have to determine whether to apply the strict-scrutiny test or some level of scrutiny.

In this case, there are important differences from the Ordinance at issue in *Pap's* and the conduct regulated by 493(10) of the Liquor Code. Unlike the Erie Ordinance, which was a total ban on public nudity anywhere and any place, the prohibition here is not total. We believe this is an important distinction because otherwise no restriction could be placed on nudity under the Liquor Code, an outcome that our Supreme Court obviously did not intend. If that were so, it would be protected speech for a person to come to a city council meeting and dance around naked to show to what condition the tax burden was reducing him or, for an entertainer, to perform a nude dance conveying an erotic message to show why more zoning districts should permit adult establishments. In this case then, we have to decide whether regulation of nude dancing in a licensed liquor establishment takes this case out of the ambit of *Pap's* and the application of strict

scrutiny for purposes of determining whether the Board's prohibition against totally nude dancing violated the First Amendment to the United States Constitution.

■ The United States Supreme Court has long upheld regulations prohibiting nude dancers in licensed liquor establishments. In *LaRue*, the Court approved the prohibition of nude dancing where liquor was sold as a valid exercise of the general police power, holding that the "conclusion, embodied in these regulations, that certain sexual performances and the dispensing of liquor by the drink ought not to occur at premises that have licenses was not an irrational one." *Id.* at 118, 93 S.Ct. at 397. Although such prohibitions regulate expressive conduct, the Supreme Court has determined that they are content-neutral and should be reviewed under the intermediate level of scrutiny articulated in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Under this test, an ordinance is constitutional if: (1) the interest served is within the power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest served is unrelated to free expression; and (4) the alleged restrictions on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *O'Brien* at 377, 88 S.Ct. at 1679.

While in *44 Liquormart*, the Court disavowed the idea expressed in a long line of cases, including *LaRue*, that the Twenty-first Amendment lent an added presumption in favor of the validity of a regulation of otherwise protected speech when it was at the site of the sale of alcoholic beverages, the Court was careful to remind us that such regulations involved licensed liquor establishments and did not impermissibly infringe on First Amendment freedom of expression. It observed "[e]ntirely apart from the Twenty-first Amendment, the State has ample power

---

11. Most federal courts have upheld the ban on nude dancing. *See J & B Entertainment v. City of Jackson*, 152 F.3d 362 (5th Cir.1998); *Farkas v. Miller*, 151 F.3d 900 (8th Cir.1998); *Sammy's of Mobile v. City of Mobile*, 140 F.3d 993 (11th Cir.1998); *D.L.S,. Inc. v. City of Chattanooga*, 107 F.3d 403 (6th Cir.1997); *Café 207 v. St. Johns County*, 989 F.2d 1136 (11th Cir.1993); *D & G Restaurant v. City of Myrtle Beach*, 953 F.2d 140 (4th Cir.1991). In these cases, as well as our review of a number of cases regulating adult establishments, most courts have applied the plurality's reasoning in *Barnes* but a significant number of courts have applied Justice Souter's reasoning for the same reasoning that we did.

to prohibit the sale of alcoholic beverages in inappropriate locations." 517 U.S. at 515, 116 S.Ct. at 1514.[12] This power is located in the inherent police power of every state to regulate to promote public decency. *Id.*

■ By stating that *LaRue* "would come out the same way," in *44 Liquormart,* the Supreme Court also reaffirmed that the *O'Brien* intermediate level of review applied to the prohibition of nudity in liquor license establishments rather than the strict scrutiny test our Supreme Court applied in *Pap's* where there was a total ban on total nudity everywhere, even where no liquor was served. Because the United States Supreme Court's holding in *44 Liquormart,* unlike in *Barnes,* is a majority opinion and would apply the *O'Brien* test, when the prohibition involves liquor establishments to determine if the prohibition violates the First Amendment, we will apply that test rather than the strict scrutiny applied in *Pap's.*[13]

The first prong of *O'Brien* requires that the governmental body have the power to enact the regulation in question. Regarding liquor establishments, our Supreme Court has stated that the Commonwealth has plenary power to regulate the conduct of those who engage in liquor sales. As our Supreme Court stated in *Com. v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397, 401 (1986):

[T]here is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. The state is vested with the sole authority to determine whether alcoholic beverages, their manufacture, gift, purchase, sale, possession or transportation shall be permitted or prohibited within its borders.

The power of prohibition includes the lesser power of regulation and a state may adopt such measures as are reasonably appropriate or needful to render the exercise of that power effective. In *view of the virtually absolute control over the business of dispensing alcoholic beverages, it is clear that the conduct of such business is lawful only to the extent that it is made so by the Liquor Code.*

In the exercise of its legitimate state interest, the Commonwealth, through the Liquor Control Board, directly controls what beverages may be bought or sold in the Commonwealth, who may sell on the retail and wholesale level, for what prices beverages may be sold and bought from the State and to issue licenses to distributors and wholesalers so that they may sell to consumers through its Board. The Commonwealth controls not only the geographical location of all its licensees, but also the physical structures in which beverages may be kept and sold. The site of every licensed premise in the Commonwealth is exclusively within the discretion of the Board. The only concessions to municipalities is their right to exclude any or all classes of licensees (i.e., dry municipalities), and to exercise appropriate zoning controls.

Enforcement of the Code and its regulations is vested in the Board. The Board and its investigative staff are vested with the full police power to enter any licensed establishment and check for violations of the Code, and, if necessary, to arrest violators of the Code and its regulations, and to seize unlawfully obtained beverages in plain view, without warrant.

*O'Brien's* second criterion requires that the prohibition further an important or substantial governmental interest. In the exercise of this plenary power of controlling

12. In *44 Liquormart,* the Supreme Court stated that *LaRue* used the Twenty-first Amendment as merely a "buttress" to the conclusion that the First Amendment did not invalidate prohibiting sexual exhibitions in premises licensed to serve alcoholic beverages. 517 U.S. at 514–16, 116 S.Ct. at 1514. In making those comments, the Supreme Court may have hoped to forestall the view that *44 Liquormart* as the death-knell for prohibiting nude entertainment in bars.

13. *See also Golden Triangle News, Inc. v. Corbett,* 689 A.2d 974 (Pa.Cmwlth.1997) affirmed, —— Pa. ——, 717 A.2d 1023 (1998) (prohibitions on an "adult" establishment does not implicate rights under the First Amendment to the Pennsylvania Constitution).

liquor establishments in making nudity violative of the provision against lewd, immoral or improper entertainment, the Board recognized certain age-old truths: first, eroticism or sex, as the national headlines establish, causes individuals to engage in irrational conduct; alcohol lessens inhibitions and clouds judgment also causing people to engage in irrational conduct; and the ultimate age-old truth, sex and alcohol in combination causes people to engage in incredibility irrational and dangerous conduct. Taking those truths' into consideration, the Board reasonably determined that nudity and alcohol were a combustible mixture and would foreclose the operation of an orderly liquor establishment, preventing the "bacchanalian revelries" that the Supreme Court noted took place in *LaRue*.

■ As to *O'Brien's* third prong "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). The Board's prohibition also did not seek to ban any message conveyed by nude dancing but only the effect that nude dancing had in relation to alcohol. It did not ban nude dancing outright, only the place and manner, and did so without regulating any particular message totally nude dancing conveys. If Licensee here surrendered its liquor license, under *Pap's*, it could then have nude dancing and its entertainers would be free to convey any additional erotic message that they purportedly could not convey with "pasties" and a "G-string." In fact, after *Pap's*, the rule is that anyone can engage in nude dancing anywhere other than in licensed liquor establishments, unless the prohibition meets the strict scrutiny test. Because the prohibition in this case is content-neutral, it meets *O'Brien's* third prong.[14]

As to *O'Brien's* fourth prong, it requires that the restrictions on alleged First Amendment freedoms be no greater than is essential to the furtherance of that interest. We cannot envision allowing any less restrictive regulation than "pasties" and a "G-string." The erotic message is still able to be conveyed; it is just less graphic. Moreover, the regulation has limited impact on free expression because any entertainer that wants to convey any additional erotic message that cannot be conveyed while wearing "pasties" and a "G-string" can do so, just not in licensed liquor establishments. Additionally, unlike under the Erie Ordinance, the penalty here is not on the entertainer who conveys an erotic message, but on the licensee.

■ Having met the *O'Brien test*, we find that the Board's prohibition against nude dancing in licensed liquor establishments did not violate the First Amendment to the United States Constitution.

## III.

Even if Section 493(10) is not unconstitutional, Licensee contends that nude dancing in bars can no longer "in this day and age" be considered to being lewd, immoral or improper entertainment. At the core of this argument is a concept that if something is acceptable, then it cannot be considered lewd, immoral or improper when, tautologically, that may only mean that lewd, immoral or improper entertainment is more acceptable. Nonetheless, we addressed an identical argument in *J.P.W.G, supra.* where the

---

**14.** Licensee points to no "message" that it or its dancers are attempting to convey. In addressing a similar lack of "message" and nude dancing First Amendment protections, in *D.G. Restaurant Corporation v. City of Myrtle Beach*, 953 F.2d 140 (4th Cir.1991), the United States Court of Appeals for the Fourth Circuit stated:

In this particular case, when pressed at oral argument to articulate the content of the message that topless dancing conveys, counsel could advance none. It would seem quite difficult for D.G. Restaurant to demonstrate that the city's focus in enacting Ordinance 89–20 was the eradication of the message conveyed by nude dancing, when the proponent of the dancing itself, is unable to describe the nature of the message which the city's regulation is alleged to have targeted.

\* \* \*

Undoubtedly, topless dancing in a bar, which is designed to entertain and promote other products and services of the bar, can convey an erotic stimulus, but, as such, that "message" would appear to be more analogous to a physical stimulus than to the communication of ideas through speech.

licensee was fined for permitting a dancer in its establishment to dance topless without any covering on her breasts. After being found in violation by the Board, the licensee appealed to the trial court arguing that *in that day and age,* topless dancing without any covering on the dancer's breasts could not be considered lewd, immoral and improper. The licensee also argued that the dancer's actions did not rise to the level of obscenity and could not be prohibited. The trial court agreed with both arguments and reversed the decision of Board, finding a violation of Section 493(10). In reversing the trial court, we stated:

> The Licensee also contends that the trial judge correctly observed that a go-go dance by a topless performer in this day and age cannot constitute lewd, immoral or improper conduct. It is certainly clear that the trial judge was of the opinion that contemporary community standards should be applied in cases such as this. Of course, that is the test used for obscenity issues in the field of criminal law. *Tahiti Bar,* however, instructs us that offenses under the Code are not subject to the same strictures applicable to other areas of the law. Our Supreme Court said, "There is perhaps no other area of permissible action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages." While moral standards may have changed, the law relative to the Board's control over licensees has not.

> \* \* \*

> Without unduly extending this opinion by setting forth the entire definition for each of [lewd, immoral or improper], suffice it to say that we are convinced that the partial nudity of a female dancer in a public bar is at the very least improper and ... also falls within the broad dictionary language defining immoral and lewd.

> Again, we repeat that while partially nude dancing may be accepted "in this day and age" in other forms of entertainment not subject to control by the Board, that fact cannot dictate the result here. The Board

is an enforcement agency charged with policing the activities of licensees. Its enforcement agents must necessarily make judgment calls as to what is and what is not a violation of the entertainment restrictions set forth in the Code. These enforcement decisions involve additional considerations not applicable to other areas of the law because of the Board's broad enforcement powers and the licensee's limited privileges under the Code. We do not believe the Courts should intervene where there is some factual basis for the Board's conclusion that a violation occurred.

*Id.,* 489 A.2d at 994–95. (citations omitted) (footnote omitted).

**IV.**

██ Even though nude dancing may fall within conduct prohibited by Section 493(10), Licensee contends that even though the uncontradicted evidence is that liquid latex dries clear and gives the appearance that the dancers' breasts are nude, the trial court, finding that the dancers engaged in lewd, immoral or improper conduct, was not supported by substantial evidence because the dancers' breasts were "covered" with liquid latex at all times while performing. We agree, however, with the trial court's holding that a substance that is transparent when dry is actually no covering at all and is indistinguishable from the topless dancing found to violate Section 430(10) in *J.P.W.G., supra.*

Because Section 493(10) of the Liquor Code is constitutional and there is substantial evidence to support the trial court's decision, the order of the trial court is affirmed.

**ORDER**

AND NOW, this 3rd day of December, 1998, the order of the Court of Common Pleas of Philadelphia County at No. 9703–0440, dated December 31, 1997, is affirmed.