813 A.2d 801

**PURPLE ORCHID, INC., Appellant,**

v.

**PENNSYLVANIA STATE POLICE, Bureau of Liquor Control Enforcement, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 18, 2000.

Decided Dec. 31, 2002.

Michael S. Durst, Philadelphia, for Purple Orchid, Inc.

Thomas M. Ballaron, Harrisburg, for Bureau of Liquor Control Enforcement

Francis X. O'Brien, for Liquor Control Board

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CASTILLE.

The issue in this appeal is whether Section 4–493(10) of the Liquor Code, 47 P.S. § 4–493(10), as applied to appellant, violates appellant's right to freedom of expression under the First Amendment of the United States Constitution.[1] For the reasons set forth below, we hold that it does not and, accordingly, we affirm the decision of the Commonwealth Court.

1. The text of the First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press...." U.S. Const. Amend. I. The First Amendment is made applicable to the states by virtue of the Due Process Clause of the Fourteenth Amendment. *Board of Education, Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 855 n. 1, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982).

The relevant facts and procedural history are as follows. Appellant operates Purple Orchid, Inc., a restaurant, bar, and cabaret located in the city of Philadelphia. On April 11, 1995, Robert Bandy, a liquor enforcement officer with the Bureau of Liquor Control Enforcement of the Pennsylvania State Police, entered appellant's establishment wearing plainclothes. Officer Bandy observed three female erotic dancers remove their tops during the course of their performances. The dancers' nipples and areolas were left covered only by a transparent liquid latex substance. None of the dancers removed the bottom portions of their outfits. Officer Bandy issued a citation to appellant for permitting lewd, immoral or improper entertainment on the licensed premises in violation of Section 4–493(10) of the Liquor Code. Section 4–493(10) provides, in pertinent part:

It shall be unlawful—

\* \* \*

for any licensee, under any circumstances, to permit in any licensed premises or in any place operated in connection therewith any lewd, immoral or improper entertainment, regardless of whether a permit to provide entertainment has been obtained or not.

47 P.S. § 4–493(10). The statute apparently has not been applied to prohibit erotic dancing outright in establishments licensed to serve alcohol. Instead, it has been interpreted by enforcement officials as requiring the dancers to cover themselves, at a minimum, with what are commonly known as "pasties" and a "G-string."

Appellant appealed the citation to an Administrative Law Judge (ALJ). The ALJ sustained the citation and imposed a fine of $1,000. The ALJ reasoned that dancing with a transparent covering over the nipples and areolas is equivalent to topless dancing, and therefore, he was constrained to find that appellant violated Section 4–493(10) pursuant to the Commonwealth Court's decision in *Pennsylvania Liquor Control Bd. v. J.P.W.G.*, 88 Pa.Cmwlth. 385, 489 A.2d 992 (Pa.Cmwlth.1985) (topless dancing constitutes "lewd, immoral or improper" conduct within meaning of Section 493(10) of Liquor Code).

Appellant appealed to the Pennsylvania Liquor Control Board (Board), which affirmed the ALJ's decision.

Appellant then appealed to the Court of Common Pleas of Philadelphia County, contending that Section 4–493(10) violated its First Amendment right of freedom of expression, that the statute was unconstitutionally vague, that exposing bare nipples and areolas was no longer lewd and lascivious, and that it was the target of selective enforcement by the Board. Following a *de novo* hearing, the trial court affirmed the Board's order.

On further appeal to the Commonwealth Court, that court affirmed, rejecting appellant's claim that Section 4–493(10) violates the First Amendment. *Purple Orchid, Inc. v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 721 A.2d 84 (Pa.Cmwlth.1998). Appellant argued to the Commonwealth Court that the U.S. Supreme Court's decision in *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (holding that regulations promulgated by California Department of Alcoholic Beverage Control banning nude dancing and other types of sexual exhibitions at establishments licensed to serve alcohol did not violate First Amendment), was "no longer valid" because it was effectively overruled by *44 Liquormart v. Rhode Island*, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). The Commonwealth Court acknowledged that the U.S. Supreme Court in *44 Liquormart* "disavowed" its reliance on the Twenty-first Amendment to buttress its conclusion in *LaRue*, but concluded that the *44 Liquormart* decision also stated that the U.S. Supreme Court's analysis in *LaRue* "would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment." *Id.* (quoting *44 Liquormart*, 517 U.S. at 515, 116 S.Ct. 1495).[2] The Commonwealth Court

---

2. The Twenty-first Amendment repealed the Eighteenth Amendment's prohibition of the manufacture, sale, or transportation of intoxicating liquors in the United States and its territories and delegated to the several states the power to prohibit commerce in, or the use of, alcoholic beverages. The *LaRue* opinion had held that the Twenty-first Amendment required that the California regulations be given an added

interpreted this statement to support the view that a regulation of nude dancing in places where alcoholic beverages are sold should be reviewed under the "intermediate level of scrutiny" articulated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (content-neutral restriction on symbolic speech does not contravene First Amendment if (1) it is within constitutional power of government; (2) it furthers an important or substantial government interest; (3) the governmental interest is unrelated to suppression of free expression; and (4) incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of that interest). Finding that Section 4-493(10) satisfied the *O'Brien* criteria, the Commonwealth Court concluded that the Board's prohibition against nude dancing in licensed liquor establishments did not violate the First Amendment.. *Purple Orchid,* 721 A.2d at 92.[3]

Appellant filed a petition for allowance of appeal, raising the sole issue of whether Section 4-493(10) as applied to appellant violates the right to freedom of expression guaranteed by the First Amendment of the U.S. Constitution. This Court granted discretionary review.

█ Preliminarily, we emphasize what we do **not** decide today. Included in the "Questions Presented" portion of appellant's brief is an assertion that Section 4-493(10) violates the "state . . . constitutional guarantee[ ] of freedom of expression." Brief for Appellant at 9. However, appellant does not develop this claim at all in the body of its brief much less does it allege that the Pennsylvania provision provides different or greater protection than the First Amendment in this instance.

presumption in favor of their validity. *See id.* at 409 U.S. at 118–19, 93 S.Ct. 390.

**3.** In addition, the Commonwealth Court rejected appellant's claims that (1) the statute was void for vagueness because what is considered lewd, immoral or improper entertainment is incapable of being discerned in advance; (2) nude dancing in licensed liquor establishments is widely accepted in contemporary society and can no longer be considered lewd, immoral or improper; and (3) the trial court's conclusion that the dancers engaged in lewd, immoral or improper conduct was not supported by substantial evidence based on the fact that the dancers' nipples were covered by liquid latex.

Indeed, appellant makes no further reference to the Pennsylvania constitution whatsoever except for a brief reference to the fact that it asserted a violation of Article I, Section 7 of the Pennsylvania Constitution [4] on appeal to the Board. *See* Brief for Appellant at 11. Accordingly, the claim is waived. *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 228 n. 9 (Pa.1995) (issue included in appellant's statement of questions involved nevertheless waived by appellant's failure to address issue in his appellate brief); *Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944, 945 n. 1 (Pa.1981) (same). This claim is independently waived because appellant did not allege a violation of Article I, Section 7 in its petition for allowance of appeal. *Shoemaker v. Lehigh Township*, 544 Pa. 304, 676 A.2d 216, 220 n. 3 (1996) (issues not raised in petition for allowance of appeal are waived). Because appellant has waived any claim that Section 4–493(10), as applied, contravenes Article I, Section 7 of the Pennsylvania Constitution, we offer no opinion on this issue. Likewise, we do not address appellant's claims, included in its brief to this Court, that Section 4–493(10) is unconstitutionally vague and overbroad because these claims were also not raised in appellant's allocatur petition, and they are waived as well. *Id.* Thus, our sole inquiry here is whether Section 4–493(10) as applied to this appellant violates the right to freedom of expression guaranteed by the First Amendment.

The constitutional validity of Section 4–493(10) is purely a question of law. As with all questions of law, our standard of review is plenary. *See Pennsylvania School Boards Assoc., Inc. v. Commonwealth Association of School Administrators*, 569 Pa. 436, 805 A.2d 476, 479 (Pa.2002) (citing *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167 (Pa.1995)). It is well settled that a statute is presumed to be constitutional and will not be declared unconstitutional

**4.** Article I, Section 7, provides, in pertinent part, as follows:

The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

Pa. Const., Art. I, § 7.

unless it clearly, palpably and plainly violates the constitution. *Id.* (citing *Commonwealth v. Cotto,* 562 Pa. 32, 753 A.2d 217, 219 (Pa.2000)). Therefore, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *Id.* (citing *Cotto, supra*).

This Court considered a virtually identical First Amendment challenge to Section 4–493(10) over forty years ago in the case of *In re Tahiti Bar, Inc.,* 395 Pa. 355, 150 A.2d 112 (Pa.1959). There, enforcement officers for the Board observed "strip acts" at establishments operated by the appellants involving the removal of substantially all of the female performers' apparel as well as "bumps and grinds" which were described as the dancers "moving the lower part[s] of [their] bod[ies] backwards and forward [in] both a fast and slow motion." *Id.* at 115. The appellants were cited for violating, *inter alia,* Section 4–493(10) of the Liquor Code, and their liquor licenses and entertainment permits were suspended. On appeal of their suspensions to this Court, the appellants argued, among other things, that "Section 493 violates the First and Fourteenth Amendments of the U.S. Constitution in that it abridges freedom of speech and expression." *Id.*

This Court began its analysis by stating that "[t]here is perhaps no other area of permissible state action within which the exercise of the police power of the state is more plenary than in the regulation and control of the use and sale of alcoholic beverages." *Id.* (citation omitted). "Our present inquiry," the Court continued, "is directed toward determining whether or not a state in exercising this power is limited and restricted by the constitutional guarantee to each individual of his right to freedom of speech and expression." The Court held that "[i]n view of the historical background giving the state virtually an absolute control over the business of dispensing alcoholic beverages, the mere statement of the question compels a negative reply." *Id.* at 116. The Court explained that:

An individual has no constitutional right to engage in the business of selling alcoholic beverages. The conduct of such a business is lawful only to the extent that it is made so by

the Liquor Code. Section 493 does not purport *per se* to control, regulate, sanction or censor the type of entertainment an establishment may present to its patrons. Section 493 merely provides that, if a certain type of entertainment is presented, the privilege of dispensing alcoholic beverages, to which an individual has no constitutional right, will be withdrawn. This does not constitute a mere semantic distinction. Section 493 is a regulation of the liquor business, and, as such, is required only to bear a reasonable relation to the evil sought to be controlled; the right of the individual to freedom of speech and expression is not involved. This section does not constitute an abridgement of the freedom of speech of the individual, but rather, an abridgement of a privilege granted solely by the state. That in order to secure and retain this privilege, an individual may be incidentally required to modify the exercise of certain rights does not constitute an unconstitutional deprivation of those rights by the issuing authority.

*Id.* at 116. Accordingly, this Court concluded that "Section 493 does not violate the right of free speech and expression as guaranteed by the First and Fourteenth Amendments of the United States Constitution." *Id.* at 117.

It is, of course, the U.S. Supreme Court which is the ultimate authority in this matter raising a claim under the U.S. Constitution, *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Hospitality Investments of Philadelphia, Inc.*, 547 Pa. 142, 689 A.2d 213, 216 (Pa.1997) ("[T]he United States Supreme Court is the final arbiter of challenges brought under the United States Constitution"), and that Court has addressed similar questions since we decided *In re Tahiti Bar*. Therefore, we are obliged to analyze and decide appellant's First Amendment claim in accordance with how we believe the U.S. Supreme Court would today dispose of the issue. In light of the U.S. Supreme Court's decision in *44 Liquormart*, it is clear that our First Amendment reasoning in *In re Tahiti Bar* is problematic. Specifically, this Court's conclusion in *In re Tahiti Bar* that the Commonwealth's "virtually absolute control" over the business of dispensing

alcohol "compels" the conclusion that Section 4–493(10) does not offend the First Amendment was expressly rejected by *44 Liquormart*, which held that the states' substantial regulatory power over the delivery or use of intoxicating beverages within their borders pursuant to the Twenty-first Amendment "does not license the [s]tates to ignore their obligations under other provisions of the Constitution[,]" including the First Amendment. 517 U.S. at 516, 116 S.Ct. 1495 (citation omitted). Thus, it is now established that the mere fact that a statute happens to regulate in the area of alcohol consumption and distribution does not insulate the law from First Amendment scrutiny, nor does it give rise to an added presumption in favor of its validity. We turn, therefore, to an analysis of the constitutionality of Section 4–493(10) pursuant to the U.S. Supreme Court's First Amendment precedent in this area.

It is clear that nude dancing of the type at issue here is expressive conduct that is protected, at least to some degree, by the First Amendment. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality opinion); *id.* at 580, 111 S.Ct. 2456 (Souter, J., concurring in judgment) (agreeing with plurality on this point); *id.* at 587, 111 S.Ct. 2456 (White, J., dissenting, joined by Marshall, Blackmun and Stevens, JJ.) (agreeing with plurality on this point).[5] To determine what level of scrutiny applies to a law impinging on this expressive conduct, a court must decide whether the regulation is content-neutral or content-based. *Texas v. Johnson*, 491 U.S. 397, 403, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" four-part standard from *O'Brien*. *Id.* But, if the governmental interest is related to the suppression of expression, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard. *Id.*

**5.** Appellee does not dispute the point. *See* Brief for Appellee at 7.

■ On the question of content neutrality, appellant relies upon this Court's First Amendment decision in *Pap's A.M. v. City of Erie*, 553 Pa. 348, 719 A.2d 273 (Pa.1998) (*"Pap's I "*), and asserts that "inextricably bound up in the stated purpose of [Section 4–493(10)] to prohibit 'lewd, immoral or improper entertainment' is an unmentioned purpose that directly impacts on the freedom of expression: that purpose is to impact negatively on the erotic message of the dance." Brief for Appellant at 18. Thus, appellant argues that the statute is content-based, rather than content-neutral, and must satisfy the strict scrutiny standard, *i.e.*, it must be narrowly drawn to accomplish a compelling governmental interest. Appellant acknowledges that this Court's decision in *Pap's I* was subsequently reversed by the United States Supreme Court in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (*"Pap's II "*) on this exact point, but nonetheless argues that the High Court's reversal "does not affect the validity of its ... argument ... that Section 4–493(10) is content-based." Supplemental Brief for Appellant at 13.

Appellee counters that the U.S. Supreme Court's precedent compels the conclusion that Section 4–493(10) is a content-neutral regulation aimed at minimizing the negative secondary effects of nude dancing which should be evaluated pursuant to the *O'Brien* test. Under our reading of the relevant precedent, we are constrained to agree. As the Commonwealth Court discussed below, although the U.S. Supreme Court in *44 Liquormart* rejected the idea expressed in *LaRue* that the Twenty-first Amendment lends an added presumption in favor of the validity of a regulation of otherwise protected speech when it occurs at the site of the sale of alcoholic beverages, the Court also stated that it was "persuaded that the Court's analysis in *LaRue* would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment." *44 Liquormart*, 517 U.S. at 515, 116 S.Ct. 1495. The Court explained that "[e]ntirely apart from the Twenty-first Amendment, the [s]tate has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." *Id.* "More-

over," the Court continued, "in subsequent cases, the Court has recognized that the [s]tates' inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved." *Id.* (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) and *Barnes, supra*). We agree with the Commonwealth Court that the clear implication of the Supreme Court's comments in *44 Liquormart* that *LaRue* would be decided the same way in the absence of any reliance upon the Twenty-first Amendment, is that the less stringent *O'Brien* standard applies to laws such as Section 4–493(10), which have been interpreted to ban nude dancing in establishments licensed to serve alcohol. *See Purple Orchid,* 721 A.2d at 91; *see also Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993, 996 (11th Cir.1998) ("The Court [in *44 Liquormart* ] reaffirmed that the *Barnes-O'Brien* intermediate level of review applies to such ordinances [restricting nude dancing in establishments licensed to serve alcohol]").

Appellant contends that the U.S. Supreme Court's comments in *44 Liquormart* that the holding in *LaRue* would have been the same had the Court placed no reliance on the Twenty-first Amendment are irrelevant to our present inquiry because the regulations at issue in *LaRue* prohibited far more extreme and objectionable conduct than the mere topless dancing at issue here. Appellant asserts that the "clear implication" of *44 Liquormart* is that "a state would be well justified in its regulation and prohibition only of such 'gross sexual exhibitions[,]' " not the topless dancing involved in this case. Brief for Appellant at 17. Appellant, however, understates the breadth of the regulations at issue in *LaRue.* Although the challenged regulations in *LaRue* prohibited "[t]he performance of acts, or simulated acts, of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law," the regulations also, by their express terms, forbade nude dancing. *LaRue,* 409 U.S. at 111–12, 93 S.Ct. 390; *see also Rubin v. Coors Brewing Co.,* 514 U.S. 476, 482 n. 2, 115 S.Ct. 1585,

131 L.Ed.2d 532 (1995) ("*LaRue* ... concerned the regulation of nude dancing in places where alcohol is served").

Although *Pap's II* did not generate a clear majority opinion of the Justices, a consideration of the four-Justice plurality opinion and Justice Souter's concurrence also supports the conclusion that Section 4–493(10) must be evaluated under the framework set forth in *O'Brien* for content-neutral restrictions on symbolic speech. The *Pap's* litigation involved the constitutionality of a public indecency ordinance enacted by the City Council of Erie which made it a summary offense to appear in public in a state of nudity. Appellant Pap's operated a non-liquor licensed establishment known as "Kandyland," which featured totally nude erotic dancing performed by women. To comply with the nudity ban in the municipal ordinance, Pap's would have had to require its dancers to wear, at a minimum, pasties and a G-string.

In *Pap's I*, a three-Justice majority of this Court held that the ordinance violated the First Amendment.[6] Noting that the preamble to the ordinance provided that the city was adopting the nudity regulation "for the purpose of limiting a recent increase in nude live entertainment within the City, which activity adversely impacts and threatens to impact on the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects," the majority acknowledged that the stated purpose of the ordinance was to combat negative secondary effects concomitant with nude dancing establishments. However, the majority reasoned that this stated purpose was inextricably bound up with an "unmentioned purpose that directly impacts on the freedom of expression: that purpose is to impact negatively on the erot-

---

6.   Five Justices participated in *Pap's I*. Mr. Justice Cappy authored the majority opinion, which was joined by former Chief Justice Flaherty and Mr. Justice Nigro. This Justice authored a concurring opinion, which was joined by Mr. Justice (now Chief Justice) Zappala. The Concurrence would have held that the ordinance contravened Article I, Section 7 of the Pennsylvania Constitution. *See Pap's I*, 719 A.2d at 281 (Castille, J., concurring).

ic message of the dance" which was presumed to be the cause of the negative secondary effects. The majority's conclusion that the ordinance revealed a "content-based motivation to suppress the expressive nature of nude dancing" led it to hold that the law was subject to strict scrutiny. The majority then concluded that the statute was not narrowly drawn to accomplish a compelling governmental interest. Finding the unconstitutional public nudity provisions of the ordinance to be severable from the remainder of the ordinance, the majority struck down only those offending provisions.

The U.S. Supreme Court, however, reversed and remanded. Justice O'Connor's plurality opinion, which was joined by Chief Justice Rehnquist and Justices Kennedy and Breyer, concluded that, in light of this Court's determination that one purpose of the ordinance was to combat harmful secondary effects, the ordinance should be evaluated under the less stringent *O'Brien* standard for content-neutral restrictions on symbolic speech. The plurality rejected this Court's approach in *Pap's I* because it deemed that approach to merely follow Justice White's dissent in *Barnes,* which had been rejected by a majority of the *Barnes* Court. The plurality also discounted this Court's finding that one unmentioned purpose of the statute was to impact negatively on the erotic message of the dance, deeming that "illicit motive" irrelevant since this Court had found that the ordinance also had a proper motive, *i.e.,* to combat negative secondary effects. The plurality then concluded that the ordinance satisfied the four-factor test from *O'Brien.*[7]

Significantly for our purposes, Justice Souter filed a concurring and dissenting opinion, agreeing with the plurality that the *O'Brien* secondary effects test governed, but dissenting from the disposition because he would apply the test differently. *Pap's II,* 529 U.S. at 310–11, 120 S.Ct. 1382 (Souter, J.,

7. Justice Scalia, joined by Justice Thomas, agreed that reversal was required, but on an entirely different basis. Consistently with his concurrence in *Barnes,* Justice Scalia deemed the Erie ordinance to be a total ban on public nudity, which was aimed at conduct, not expression, and thus was not subject to First Amendment scrutiny at all.

concurring in part and dissenting in part). In Justice Souter's view, the record failed to reveal "any evidence on which Erie may have relied, either for the seriousness of the threatened harm or for the efficacy of its chosen remedy" and, thus, the record did not permit a conclusion "that Erie's ordinance is reasonably designed to mitigate real harms." *Id.* at 314, 317, 120 S.Ct. 1382. Justice Souter would have remanded the case to permit Erie to attempt to make that factual showing.[8, 9]

Thus, although *Pap's II* did not produce a single majority opinion, a majority of the court—the four-Justice plurality and Justice Souter—did appear to agree that, while nude dancing is expressive conduct protected by the First Amendment, regulation of such dancing is content-neutral, and thus need only satisfy the less stringent standard from *O'Brien* for evaluating restrictions on symbolic speech, so long as one purpose of the regulation is to combat the negative secondary effects of the dancing. *See generally Pap's III*, slip op. at 27–28. Unlike the ordinance at issue in *Pap's*, the statute here does not specifically mention nudity, much less nude dancing. It is, rather, a broader regulation of "lewd, immoral or improper entertainment" in establishments licensed to furnish alcohol. As the case has been presented to this Court, however, the statute has been interpreted and enforced as a ban on nude dancing.

Section 4–493(10) comprises part of Pennsylvania's long-established Liquor Code, 47 P.S. § 1–101 *et seq.* Section 1–104 of the Code provides that the Code is "an exercise of the police power of the Commonwealth for the protection of the

**8.** Justice Stevens, in a dissent joined by Justice Ginsburg, noted his continued agreement with Justice White's dissent in *Barnes*, and also expressed his disagreement with what he termed the Court's "mishandling" of its secondary effects precedents. In the dissent's view, the "secondary effects" of commercial enterprises featuring indecent entertainment had been deemed a legitimate basis only to regulate their location and not a basis to "justify the total suppression of protected speech." *Pap's II*, 529 U.S. at 317–18, 120 S.Ct. 1382 (Stevens, J., dissenting).

**9.** Upon remand, this Court held that the ordinance was unconstitutional under Article I, Section 7 of the Pennsylvania Constitution and, as in *Pap's I*, we severed the public nudity provisions of the ordinance. *Pap's A.M. v. City of Erie*, 812 A.2d 591 (Pa.2002) (*"Pap's III"*).

public welfare, health, peace and morals of the people of the Commonwealth." 47 P.S. § 1–104; *see also Tony Savatt, Inc. v. Latrobe Brewing Co.,* 400 Pa.Super. 296, 583 A.2d 796, 800 (Pa.Super.1990) ("As remedial civil legislation, the Liquor Code is to be liberally construed to effectuate its purpose to protect public health, welfare, peace and morals"). This pronouncement of legislative purpose certainly suggests that the challenged statute is aimed at addressing perceived harmful secondary effects concomitant with nude dancing rather than at suppressing the expressive message of nude dancing. *See Pap's II,* 529 U.S. at 290, 120 S.Ct. 1382; *see also City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (deeming city zoning ordinance content-neutral where "[t]he ordinance by its terms [was] designed to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and pre-serv[e] the quality of [the city's] neighborhoods, commercial districts and the quality of urban life' "). In addition, other subsections of Section 4–493 prohibit, among other things, furnishing liquor to visibly intoxicated persons or minors, employing minors in licensed liquor establishments, permitting persons of ill repute, known criminals, prostitutes or minors to frequent premises licensed to serve alcohol, and furnishing alcohol at unlawful hours. Subsection (10)'s prohibition on lewd, immoral or improper entertainment is most naturally viewed as a companion provision to these subsections, also intended to prevent societal ills. *See Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 515 (4th Cir.2002) (deeming statute and rule prohibiting liquor licensees from offering sexual entertainment content-neutral restrictions aimed at secondary effects because, *inter alia,* they are most naturally viewed as companion provisions to subsections requiring licensees to prevent prostitution, gambling, fights, nudity and other societal ills). For these reasons, we conclude that one purpose of Section 4–493(10) is to address the negative secondary effects that follow when nude dancing is performed in establishments that are licensed to serve alcohol. Accordingly, we believe that a majority of the U.S. Supreme Court would deem

Section 4–493(10) to be a content-neutral restriction of expressive conduct subject to *O'Brien* intermediate scrutiny.

■  We believe that a majority of the U.S. Supreme Court would further conclude that the *O'Brien* standard is satisfied here.  The first factor of the *O'Brien* test is whether the governmental regulation falls within the constitutional power of the government to enact such regulation.  Appellant argues that this first factor is not met because the Board lacks the authority to interpret and enforce Section 4–493(10)'s ban on lewd, immoral or improper entertainment.  Appellant asserts that Sections 2–207 (general powers of Board) and 2–208 (specific subjects on which Board may adopt regulations) of the Liquor Code limit the Board's powers to the restriction and regulation of the sale and distribution of alcoholic beverages.  Appellant contends that "[b]y interpreting and enforcing Section 4–493(10) . . . to include a ban on topless, erotic dancing at licensees, the Board attempted to legislate morality and exceeded its scope of authority to act."  Supplemental Brief of Appellant at 17.  Section 2–207(h) of the Liquor Code, however, broadly grants to the Board the authority to "do all such things and perform all such acts as are deemed necessary or advisable for the purpose of carrying into effect the provisions of this act and the regulations made thereunder."  47 P.S. § 2–207(h).  The Board clearly acted within this broad statutory authority when it enforced the statute against appellant.  In any event, as appellee notes, the relevant inquiry is not whether the Board exceeded its statutory powers in enforcing the statute, but whether it was within the constitutional power of the Commonwealth to enact the statute in the first place.  *See Pap's II*, 529 U.S. at 296, 120 S.Ct. 1382.  Although the states may not violate the constitutional rights of their citizens in regulating the alcohol industry, they possess "ample power" to adopt such measures as they deem reasonable and appropriate to regulate and control the conduct of those who engage in liquor sales and other aspects of the liquor business.  *44 Liquormart*, 517 U.S. at 516, 116 S.Ct. 1495.  It was unquestionably within the Commonwealth's con-

stitutional powers to enact Section 4–493(10)'s prohibition of nude dancing in establishments licensed to serve alcohol.

The second *O'Brien* factor—whether the regulation furthers an important or substantial government interest—is also satisfied. Appellee's asserted interest in preventing the negative secondary effects associated with nude dancing in licensed liquor establishments is clearly an important one. *See Pap's II*, 529 U.S. at 296, 120 S.Ct. 1382 (plurality opinion) ("The asserted interests of regulating conduct through a public nudity ban and of combating the harmful secondary effects associated with nude dancing are undeniably important"). And it is "evident" that Section 4–493(10)'s ban on nude dancing in licensed liquor establishments furthers this important interest. *Id.* at 300, 120 S.Ct. 1382. "To be sure, requiring dancers to wear pasties and G-strings may not greatly reduce the[ ] secondary effects [of erotic dancing], but *O'Brien* requires only that the regulation further the interest in combating such effects." *Id.* Although appellee has not produced any specific evidence that nude dancing in licensed liquor establishments causes negative secondary consequences in Pennsylvania, and that requiring dancers to wear pasties and G-strings will help to reduce these deleterious effects, the reversal in *Pap's II* inevitably conveys that a majority of the U.S. Supreme Court would conclude that such evidence is not required in the context of intermediate scrutiny of secondary effects legislation. The *Pap's II* plurality stated that:

> in terms of demonstrating that such secondary effects pose a threat, the city need not "conduct new studies or produce evidence independent of that already generated by other cities" to demonstrate the problem of secondary effects, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." [*Renton*, 475 U.S. at 51–52, 106 S.Ct. 925.] Because the nude dancing at Kandyland is of the same character as the adult entertainment at issue in [*Renton, Young*, and *LaRue*,] it was reasonable for Erie to conclude that such nude dancing was likely to produce the same secondary effects. And Erie could reasonably rely on the evidentiary

foundation set forth in *Renton* and [*Young*] to the effect that secondary effects are caused by the presence of even one adult entertainment establishment in a given neighborhood. *See* [*Renton,* 475 U.S. at 51–52, 106 S.Ct. 925] (indicating that reliance on a judicial opinion that describes the evidentiary basis is sufficient).

*Pap's II,* 529 U.S. at 296–97, 120 S.Ct. 1382. In addition, the plurality stated that the city was not obliged to present empirical data that its chosen remedy would be effective in combating the secondary effects of nude dancing because requiring the municipality to make such a showing would go too far in undermining the settled position that governmental entities "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." *Id.* at 301, 120 S.Ct. 1382 (quoting *Renton,* 475 U.S. at 52, 106 S.Ct. 925 and *Young,* 427 U.S. at 71, 96 S.Ct. 2440 (plurality opinion)).

It is also significant that five Justices of the U.S. Supreme Court appeared to endorse the approach of the *Pap's II* plurality concerning the evidentiary requirement in intermediate scrutiny cases in the more recent case of *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), although *Alameda Books,* like *Pap's II,* did not produce a single majority opinion. *See Alameda Books,* 122 S.Ct. at 1736–37 (2002) (four-Justice plurality opinion); *id.* at 1741 (Kennedy, J., concurring in the judgment) (agreeing with plurality on this point). Although the continuing inability of the U.S. Supreme Court to arrive at clear majority views on the issue necessarily creates some uncertainty in this area, it would seem that a state court would act at its peril in deviating from this interpretation of *O'Brien.* We conclude that this statute satisfies the second prong of the *O'Brien* test.

We also believe that the U.S. Supreme Court would conclude that the statute satisfies *O'Brien's* third factor, *i.e.,* the government interest is unrelated to the suppression of free expression. As we have noted above, Section 1–104 of the Liquor Code provides that the Code was enacted "for the

protection of the public welfare, health, peace and morals of the people of the Commonwealth," 47 P.S. § 1–104, clearly suggesting that Section 4–493(10) is aimed at addressing harmful secondary effects rather than at suppressing expression. In addition, other provisions of 4–493 address social problems such as underage drinking, prostitution and other criminal conduct, and serving alcohol after lawful hours. Subsection (10) is most naturally viewed as a companion provision to these subsections, also intended to prevent societal ills.

*O'Brien's* fourth and final prong, that the restriction on free expression be no greater than is essential to the furtherance of the government interest, is satisfied as well. Section 4–493(10) does not bar nude or erotic dancing in Pennsylvania outright: it applies only in licensed liquor establishments. Moreover, even in licensed liquor establishments, the dancers at Purple Orchid and other similar establishments remain free to perform wearing pasties and G-strings. All that has been muted by this statute is that portion of the erotic expression that occurs "when the last stitch is dropped." *Pap's II,* 529 U.S. at 294, 120 S.Ct. 1382 (plurality opinion). Under the U.S. Supreme Court's jurisprudence, then, we must deem the restriction as leaving ample First Amendment capacity for the performers to convey their erotic message. *See id.* at 301, 120 S.Ct. 1382; *see also Barnes,* 501 U.S. at 572, 111 S.Ct. 2456 (plurality opinion) ("Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose"); *id.* at 587, 111 S.Ct. 2456 (Souter, J., concurring in judgment) ("Dropping the final stitch is prohibited, but the limitation is minor when measured against the dancer's remaining capacity and opportunity to express the erotic message").

In summary, our review of the U.S. Supreme Court's governing precedent under the First Amendment leads us to conclude that the statute here, as applied, is a content-neutral restriction on expressive conduct which must be subjected to intermediate scrutiny under the four-factor test deriving from *United States v. O'Brien.* Applying that test, we conclude that the challenged statute is justified under *O'Brien.* Ac-

cordingly, we hold that Section 4–493(10) of the Liquor Code as applied to appellant does not violate appellant's right to freedom of expression as guaranteed by the First Amendment of the U.S. Constitution. The decision of the Commonwealth Court is, therefore, affirmed.

Justice NEWMAN did not participate in the consideration or decision of this case.