J-A01002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BENTON STUDENT HOUSING, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LION CONSTRUCTION, LLC, LION | : | |
| CONSTRUCTION MANAGEMENT, | : | |
| LLC, SEAN SCHELLENGER, AND | : | No. 2609 EDA 2017 |
| MICHAEL STILLWELL | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered July 17, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  August Term, 2016 No. 000749

BEFORE:   LAZARUS, J., OTT, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 20, 2018**

Lion Construction, LLC, Lion Construction Management, LLC, Sean Schellenger, and Michael Stillwell (collectively, "Defendants" or "Lion Construction") appeal from the trial court's order denying their emergency petition to strike and/or open the $95,000.00 stipulated judgment entered against them in the underlying action.[1]  After careful review, we reverse and remand.

Benton, a student-housing development company, entered into a construction contract with Streamline Solutions, LLC, for work on one of its student-housing developments.  When Streamline breached its contract with Benton, Benton filed an action against Streamline that resulted in a

_____

[1] Pursuant to Pa.R.A.P. 311(a)(1), an appeal may be taken as of right from an order refusing to open, vacate, or strike off a judgment.

_____
*   Retired Senior Judge assigned to the Superior Court.

$115,245.45 arbitrator's award in favor of Benton, dated October 16, 2015. On October 22, 2015, the owners of Streamline, Schellenger and Stillwell, formed Lion Construction, LLC and Lion Construction Management, LLC. The Streamline award was reduced to judgment on January 13, 2016; however, Benton was unsuccessful in collecting against it. As a result, on August 5, 2016, Benton instituted the "underlying action" against Lion Construction seeking to impose successor liability and to pierce Streamline's corporate veil with respect to Schellenger and Stillwell in order to recover its Streamline judgment.

In the midst of discovery in the underlying action, the parties agreed to settle the case. To that end, the parties executed a settlement agreement (the "Agreement") on May 22, 2017, wherein they agreed to settle their respective claims relating to the Streamline judgment and to dismiss the Lion Litigation. The Agreement provided the following relevant terms:

- Lion Construction would pay Benton $65,000.00 as the settlement amount;

- Lion Construction would pay $35,000.00 as an initial payment, on or before the execution of the agreement or by May 19, 2017, whichever is earlier;

- **The balance of $30,000.00 shall be payment in equal monthly installments of $6,000.00 on the 15th day of each month, commencing on June 15, 2017,** and continuing until paid in full. No interest shall accrue on any such payments.

Parties' Settlement Agreement, 5/22/17, at ¶¶ C(2)(a) & (b) (emphasis added). As security for payment of the settlement amount, Defendants executed and delivered a stipulated judgment in the amount of $130,000.00;

the judgment would be filed in the event of an "uncured" default under the Settlement Agreement. *Id.* at ¶ C(3).

In the event of a default, the Agreement provides that:

[If the] Defendants fail to make any of the payments set forth in paragraph 2, above, on the date which payment is due (a "Default"), Benton may: (a) seek to enter the Stipulated Judgment in the face amount thereof, with a credit for any payments made thereunder; and/or (b) pursue any further rights and/or remedies against the Defendants under applicable law. No such Default shall have occurred if, prior to the due date of such payment, Defendants provide proof to Benton of the overnight delivery of such payment, together with a tracking number for said delivery. If such tracking number evidences that payment was picked up for delivery before the due date, then that shall constitute timeliness of delivery. If the Defendants' payment is either lost or not delivered, Defendants shall provide a replacement check upon notice from Benton, or its counsel, by the next business day following receipt of such notice. For purposes of this paragraph, notice shall be deemed proper if given by electronic mail, fax, or other form of mail producing a receipt of mailing, addressed to counsel for the Defendants[.]

*Id.* at ¶ C(6).

Defendants made the initial $35,000.00 payment under the Agreement. However, Defendants defaulted on the first $6,000.00 installment payment by failing to make the scheduled payment by June 15, 2017, or provide proof, pursuant to paragraph C(6) of the Agreement, that such payment was delivered. Accordingly, Benton filed a praecipe for a stipulated judgment. Thereafter, on June 19, 2017, Benton received a $6,000.00 check dated June 13, 2017, from Lion Construction, LLC; the postage Lion used to mail the payment did not bear a postmark. Defendants also attempted to hand-deliver

- 3 -

a check to Benton on June 20, 2017, but counsel for Benton refused the delivery.

On June 20, 2017, Lion's counsel received a notice, by email, from the trial court indicating that Benton had filed a "Praecipe to Enter Stipulated Judgment" in the amount of $95,000.00;[2] the court entered judgment against Lion on that same date. On June 21, 2017, Defendant filed a petition to open and/or strike[3] the stipulated judgment alleging that it mailed the installment check on June 13, 2017, and that Benton's counsel did not contact them or their attorney to notify them that payment was not received. Defendants' Petition to Open and/or Strike Off Judgment, 6/21/17, at ¶¶ 8, 12.

On July 17, 2017, the trial court denied Defendants' petition to strike and/or open the stipulated judgment. The Honorable Gary Glazer explained his reason for denying Lion Construction's petition as follows:

---

[2] This accounted for a credit of $35,000.00, the initial payment Defendants made as per paragraph C(2)(a) of the Agreement.

[3] A petition to strike a judgment differs from a petition to open a judgment. A petition to strike operates as a demurrer to the record and will not be granted unless a fatal defect in the judgment appears on the face of the record. Matters *dehors* the record will not be considered, and if the record is self-sustaining, the judgment will not be stricken. **Kophazy v. Kophazy**, 421 A.2d 246, 247 (Pa. Super. 1980), *citing* **Cameron v. Great Atlantic and Pacific Tea Co.**, 266 A.3d 715 (Pa. 1970). A petition to open, on the other hand, appeals to the court's equitable powers and is a matter of judicial discretion. **McCoy v. Public Acceptance Corp.**, 305 A.2d 698 (Pa. 1973). Although Defendants titled their petition in the alternative, on appeal they only argue the standard for a petition to open. Thus, we will confine our review to that standard as well.

> [C]ontrary to Defendants' assertions, the Settlement Agreement provides Defendants with no right to cure a default. The language in section 6 permits Defendants to replace a check that was timely picked up for overnight shipping if it went astray, if a tracking number and overnight shipping were provided. It is not argued that Defendants provided Plaintiffs with a tracking number for overnight shipping. There is no language in the Agreement requiring notice and opportunity to cure. Accordingly, the Petition is denied.

Trial Court Rule 1925(a) Order, 7/17/17, at 1 n.1.

Defendants filed a motion for reconsideration and request for an evidentiary hearing on July 21, 2017. The court denied the motion on July 28, 2017.[4] This timely appeal follows,[5] in which Defendants present the following issues for our consideration:

    (1)    Whether the trial court abused its discretion and/or erred as a matter of law in finding that the judgment should not have been stricken and/or opened because Benton filed the judgment after the default was cured.

    (2)    Whether the trial court abused its discretion and/or erred as a matter of law in finding that the judgment entered should not have been stricken and/or opened where Benton Student Housing, LLC was in possession of the payment due.

    (3)    Whether the trial court abused its discretion and/or erred as a matter of law in finding that there was no right to cure a default under the settlement agreement.

    (4)    Whether the trial court abused its discretion and/or erred as a matter of law in finding the parties did not intend to include a right to cure a default.

---

[4] On August 3, 2017, the trial court denied Benton's *ex parte* Emergency Petition to Stay Execution of the judgment.

[5] The trial court did not order Defendants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

(5)     Whether the trial court abused its discretion and/or erred as a matter of law by denying Lion the discovery it requested of Benton in its Petition[.]

(6)     Whether the trial court abused its discretion and/or erred as a matter of law by denying Lion's request for [a] hearing and/or trial to present evidence and testimony in violation of its due process rights.

(7)     Whether the trial court abused its discretion and/or erred as a matter of law in finding that the "uncured default" was an unambiguous term.

(8)     Whether the trial court abused its discretion and/or erred as a matter of law by relying on settlement communications prohibited by Pa.R.[E.]. 408.

Appellant's Brief, at 3-4.

Defendants argue that since Benton received the check, dated June 13, 2017, before Benton filed its praecipe for a stipulated judgment, it was required to notify them that it had not received the check by the June 15, 2017 due date and give them an attempt to cure the default under the Agreement by accepting a replacement check.

Our review of an order denying a petition to open a default judgment is well-settled:

> A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law.

***Green Acres Rehab. & Nursing Ctr. v. Sullivan***, 113 A.3d 1261, 1270 (Pa. Super. 2015) (quotation omitted).  Generally, a trial court will open a default judgment if the defendant has:

> (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a

- 6 -

responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint.

**US Bank N.A. v. Mallory**, 982 A.2d 986, 994-95 (Pa. Super. 2009). "When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, i.e., testimony, depositions, admissions, and other evidence, may be considered by the court." **Resolution Trust Corp. v. Copley Qu-Wayne Assocs.**, 683 A.2d 269, 273 (Pa. 1996).

Here, Defendants unquestionably timely filed their petition. Thus, we must next turn our analysis as to whether Defendants set forth a meritorious defense.

First, we note that Benton was not required under the Agreement to accept the Defendants' replacement check or to notify Benton that it received the check after the due date. The language in the default paragraph of the Agreement does not require Benton to either accept a replacement check under the facts of the case or require it to notify Defendants that it did not receive the check by the due date.

Specifically, the Agreement provides that:

[If the] Defendants fail to make any of the payments set forth in paragraph 2, above, **on the date which payment is due** (a "Default"), Benton may: (a) seek to enter the Stipulated Judgment in the face amount thereof, with a credit for any payments made thereunder; and/or (b) pursue any further rights and/or remedies against the Defendants under applicable law. **No such Default shall have occurred if, prior to the due date of such payment, Defendants provide proof to Benton of the overnight delivery of such payment, together with a tracking number for said delivery. If such tracking number evidences that payment was picked up for delivery before**

**the due date, then that shall constitute timeliness of delivery. If the Defendants' payment is either lost or not delivered, Defendants shall provide a replacement check upon notice from Benton, or its counsel, by the next business day following receipt of such notice. For purpose of this paragraph, notice shall be deemed proper if given by electronic mail, fax, or other form of mail producing a receipt of mailing, addressed to counsel for the Defendants**[.]

Parties' Settlement Agreement, 5/22/17, at ¶ C(6) (emphasis added). The language clearly states that a default is defined as failing to make any of the installment payments "on the date which payment is due." In addition the Agreement will excuse a payment picked up for delivery *before the due date*, **only if** Defendants provide Benton proof of overnight delivery of that payment, together with a tracking number for the delivery. Moreover, in the event that that overnight delivery is either lost or not delivered, Defendants may provide a replacement check by the next business day upon notice from Benton (based on the proof of payment and tracking number) that said delivery was lost or stolen. Under the latter circumstance, i.e., overnight delivery, it is not considered a default under the Agreement.

The following email exchange, which occurred just prior to execution of the Agreement, also supports the conclusion that Benton was not required to notify Defendants that it did not receive the check and permit them to issue a replacement check:

This shall confirm that we'll make the following changes to the agreement, which I will circulate either today or over the weekend.

1. Section 2(b) will be revised to read "The balance of Thirty Thousand Dollars ($30,000.00) (the "Balance") shall be payable in equal monthly installments of Six Thousand

> Dollars ($6,000) on the fifteenth day of each month, commencing on June 15, 2017, and continuing until paid in full. No interest shall accrue on any such payments. For purposes of this paragraph, in the event that the due date of a payments falls on a Saturday, Sunday, or legal holiday, then such payment shall be due on the next business day following such due date.
>
> 2. Paragraph 6, entitled "Default" will be revised to read "in the event that Defendants fail to make any of the payments set forth in paragraph 2, above, on the date which payment is due (a "Default"), Benton may: (a) seek to enter the Stipulated Judgment in the face amount thereof, with a credit for any payments made hereunder; and/or (b) pursue any further rights and/or remedies against the Defendants under applicable law. **No such default shall have occurred if, prior to the due date of such payment, Defendants provide proof to Benton of the overnight delivery of such payment, together with a tracking number for said delivery.**

> As we agreed, Benton will hold the $35,000 check and not deposit it until after the agreement is signed on Monday.

Email from Harry J. Giacometti, Esquire, to Paul Bucco, Esquire (May 19, 2017, 4:24 PM) (emphasis added). In response to these revised sections of the Agreement, Anthony E. Maras, Esquire, attorney for Streamline Group LLC, sent the following email approving the Agreement, further clarifying paragraph 6:

> This is approved subject to:
>
> > If we send it via FedEx, and provide you a tracking number, which tracking number sho[w]s pickup on or before the due date, then that shall constitute compliance. **If the package is lost or not delivered we will provide a replacement check upon notice from you the next business day.**

Email from Anthony E. Maras, Esquire, to Harry Giacometti, Esquire (May 19, 2017, 5:00 PM) (emphasis added).

Based on the above-quoted email exchanges, which we may consider in a petition to open, **Resolution Trust**, **supra**, the parties intended a replacement check to apply only to situations where Defendants chose to use an overnight delivery service (such as FedEx) and where that package is subsequently lost or stolen. This is supported by the fact that the way Benton would be able to notify Defendants that a package had not arrived as scheduled (i.e., late or stolen) would have been after it received Defendant's proof of payment for overnight delivery, with an accompanying tracking number.

Under such circumstances, Defendants have not shown a meritorious defense where their payment, sent via regular mail, did not arrive by the due date and where they did not use an overnight delivery service and provide Benton with proof of payment and an accompanying tracking number. Only under the latter circumstances would a lost or stolen check have triggered the option of sending a timely replacement check. It was not Benton's duty to notify Defendants that their check was received late under the facts of this case.

There is no question that Defendants defaulted under the Agreement where, under the terms of the Agreement, Benton was not required to accept Defendants' check, dated July 13, 2017, if it received it prior to filing a praecipe for a stipulated judgment. Rather, paragraph 2 of the parties' Agreement clearly specified that the balance of $30,000.00 "shall be payable . . . **on the fifteenth day of each month**," Agreement, 5/22/17, at ¶ C(2)(b)

(emphasis added), and that it is considered a default under the Agreement "[i]n the event that Defendants fail to make any of the payments set forth in paragraph 2 . . **on the date which payment is due**." **Id.** at ¶ (C)(6) (emphasis added). Thus, despite the fact that Defendants may have dated and mailed the check prior to the payment due date, the check was never alleged nor proven to have been received by Benton prior to or on the actual due date. In fact, Defendants aver in their motion for reconsideration that Benton received their check on June 19, 2017—four days *after* the due date. Defendants' Motion for Reconsideration/Request for Hearing, 7/21/17, at ¶ 8. Thus, Defendants technically defaulted under the parties' Agreement.

We note that:

> "The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." **Mastroni-Mucker v. Allstate Ins. Co.**, [] 976 A.2d 510, 517-18 ([Pa. Super.] 2009)[.] "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." **Id.** at 518.

**Step Plan Servs. v. Koresko**, 12 A.3d 401, 408 (Pa. Super. 2010). Moreover,

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the

language they employed. "When a writing is clear and unequivocal, its meaning must be determined by its contents alone."

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." This question, however, is not resolved in a vacuum. Instead, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." In the absence of an ambiguity, the plain meaning of an agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ferrer v. Trs. Of the Univ. of Pa.*, 825 A.2d 591, 608 (Pa. 2002) (citation omitted).

Defendants next contend that their "default was cured by Benton's possession of the check prior to [] Benton's filing of the Praecipe." Appellant's Brief, at 10. To support this argument, Defendants refer to a sentence in paragraph 3 of the Agreement, which states, "The Stipulated Judgment shall not be filed of record unless and until the occurrence of an *uncured Default hereunder*." ***See*** Parties' Agreement, 5/22/17, at ¶ C(3) (emphasis added). On April 20, 2107, the parties put the material terms of the settlement agreement on the record. At that meeting, Benson's counsel indicated that the parties agreed "to a reasonable cure period in the event of a late payment. We said ten days. The judgment would not be filed of record until default." Settlement Meeting, 4/20/17, at 5. While prior versions of the Agreement included this 10-day right to cure provision in the default paragraph, the parties final May 22, 2017 Agreement did not contain such a provision.

- 12 -

Benton maintains that the parties removed the "cure period" in prior versions of the Agreement in exchange for changing the due date of the initial monthly payment from June 1st to June 15th.[6]  However, we find that further discovery in the matter and/or testimony at a hearing is required to determine the true intent of the "uncured" language in the Agreement.[7]  Without a hearing or additional evidence, the "uncured Default" language is ambiguous in the context of the entire Agreement and, specifically, the default provision. ***See also Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority***, 916 A.2d 1183, 1189 (Pa. Super. 2007) (where parties, without any fraud or mistake, deliberately put engagements in writing, law declares the writing to be not

_____

[6] ***See*** Tony Maras Email to Harry Giacometti, Esquire (May 19, 2017 at 2:27 PM) ("I told everyone when you put the outside date that I didn't want a 2[-]week window between the initial check and the first payment, and everyone nodded.").  ***Compare*** Agreement, Exhibit G to Plaintiff's Memorandum of Law in Opposition to Defendant's Petition to Open and/or Strike off Judgment, 5/18/17, at ¶ C(6)  ("In the event that Defendants fail to make any of the payments set forth in paragraph 2, above, which failure is not cured within ten (10) days of notice thereof as provided below (a "Default"), . . . Benton may seek to enter the Stipulated Judgment  . . . and/or pursue any further rights and/or remedies[.]") ***with*** Parties' Settlement Agreement, 5/22/17, at ¶ C(6) ("[If the] Defendants fail to make any of the payments set forth in paragraph 2, above, on the date which payment is due (a "Default"), Benton may:  (a) seek to enter the Stipulated Judgment in the face amount thereof, with a credit for any payments made thereunder; and/or (b) pursue any further rights and/or remedies against the Defendants under applicable law.").

[7] Paragraph C(3) is not the only portion of the Agreement that contains the "uncured Default" language.  ***See*** Parties' Agreement (Transfer of Interests), ¶ (7) ("Upon the occurrence of an uncured Default, in the event . . . Lion Construction or Lion Management, or either of them, ceases operations, and/or transfers any of their assets outside the ordinary course of business, such actions shall be deemed to be presumptively fraudulent as to Benton[.]").

only best, but only evidence of their agreement; however, court may consider extrinsic or parole evidence to determine parties' intent where language of agreement is ambiguous).

Defendants raise a meritorious issue regarding whether their default was cured by the delivery of the check prior to Benton filing the stipulated judgment. *US Bank N.A.*, *supra*. Accordingly, we reverse the court's order denying Defendants' petition to open and/or strike the stipulated judgment and remand for further proceedings consistent with the dictates of this memorandum. *See Willits v. Fryer*, 734 A.2d 425 (Pa. Super. 1999) (where Court found language of promissory note was unclear, Appellants alleged meritorious defense and reversed court's order denying their petition to open and/or strike judgment).

Order reversed. Case remanded. Jurisdiction relinquished.[8]

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/18

---

[8] Defendants list several issues in their statement of questions involved. However, they have abandoned them on appeal by failing to argue them in the argument section of their brief. Specifically, we find issues five, six and eight have been waived on appeal. *Purple Orchid, Inc. v. Pa. State Police*, 813 A.2d 801, 804 (Pa. 2002) (issue included in "statement of questions" waived by failure to address and develop in appellate brief).