# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1521

_____

| | | |
|---|---|---|
| John Ways, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Lincoln, Nebraska, a city of | * | |
| the primary class; Don Wesely, Mayor | * | Appeal from the United States |
| of Lincoln; City Council, City of | * | District Court for the |
| Lincoln; Jeffery Fortenberry, City | * | District of Nebraska. |
| Council; Jon A. Camp, City Council- | * | |
| person; Cindy Johnson, City Council- | * | |
| person; Jonathan Cook, City Council- | * | |
| person; Annette McRoy, City Council- | * | |
| person; Colleen Seng, City Council- | * | |
| person, Chair; Jerry Shoecraft, City | * | |
| Councilperson; Tom Casady, Chief of | * | |
| Police for the City of Lincoln, Nebraska, | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: October 18, 2001
Filed: December 14, 2001

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

John Ways brought this action to challenge the constitutionality of a now repealed Lincoln ordinance prohibiting sexual contact in entertainment businesses. The district court[1] enjoined enforcement of the ordinance after concluding that it was unconstitutionally overbroad in violation of the First Amendment. We affirm.

The Lincoln City Council passed Ordinance No. 17613, codified as Lincoln Municipal Code Section 9.16.240, on February 22, 2000. The ordinance prohibited any employee or performer from having sexual contact with any other person for remuneration or in conjunction with a performance or entertainment in any business establishment. It defined sexual contact as "intentional touching of a person's sexual organ, buttocks, or breasts, whether covered or not, or kissing, when such contact can reasonably be construed as being for the purpose of sexual arousal or gratification of either party or any observer." The ordinance outlined not only what conduct was prohibited, but also those who may be held responsible for it.[2] The preface to the

---

[1] The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

[2] The full text of the ordinance follows:

9.16.240 Sexual Contact: Prohibited.

(a.)    It shall be unlawful for any employee or performer (including amateur performers) in any business or commercial establishment to have any sexual contact with any other employee, performer or patron for gratuity, pay or other remuneration, direct or indirect, or, in conjunction with or as part of any performance or entertainment in any business or commercial establishment.

(b.)    It shall be unlawful for any patron to have sexual contact with any employee or performer in any business or commercial establishment.

(c.)    For the purposes of this section, sexual contact shall mean the intentional touching of a person's sexual organ, buttocks, or breasts,

ordinance stated that it intended to curb secondary effects of public sexual contact, such as immorality, "prostitution, assaultive behavior, and other related criminal behavior."

On March 6, 2000, John Ways filed this action alleging that Ordinance No. 17613 was unconstitutionally vague and overbroad, in violation of the First Amendment to the United States Constitution. Ways is director of operations for Mataya's "Babydolls" Gentlemens Club in Lincoln, Nebraska, and a shareholder in the corporation that does business as Mataya's, an alcohol-free adult entertainment business featuring women dancers. The district court issued a preliminary injunction enjoining enforcement of Ordinance No. 17613, but before the case came on for trial the Lincoln City Council enacted Ordinance No. 17657, which effectively repealed Ordinance No. 17613.

Ordinance No. 17657 is similar to the ordinance involved in this case except for the addition of a subsection (f), which exempts theaters, concert halls, and art centers from the prohibitions of the ordinance:

---

        whether covered or not, or kissing, when such contact can reasonably be construed as being for the purpose of sexual arousal or gratification of either party or any observer.

(d.)      It shall be unlawful for any person purposely or knowingly to solicit, induce, or attempt to induce another person to engage in an act or acts prohibited hereunder.

(e.)      It shall be unlawful for the owner, lessee, proprietor, or manager of any business or commercial establishment to knowingly allow any person on the premises of such business or commercial establishment to engage in an act or acts prohibits [sic] hereunder.

Lincoln, Neb., Mun. Code § 9.16.240 (2000).

(f.)    The provisions of this section shall not apply to a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances and in which any of the circumstances contained in this section were permitted or allowed as part of such art exhibits or performances.

After enactment of Ordinance No. 17657, Ways filed a new action to challenge it. In that case, which is still pending, the district court denied his motion for preliminary injunctive relief. The constitutionality of Ordinance No. 17657 with new subsection (f) is not before us on this appeal which involves only the original ordinance.[3]

After trial in this case was held on October 2, 2000, the court concluded that Ordinance No. 17613 was not unconstitutionally vague but that it was unconstitutionally overbroad because it "contains no exception for theaters, concert halls, art centers, [or] museums" and because the city had not shown that "public sexual contact in venues other than the adult entertainment business is an accurate predictor of secondary adverse effects."  The district court noted that nude dancing is "expressive conduct within the outer perimeters of the First Amendment," Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566 (1991). In addition to its overbreadth analysis the district court employed the test from United States v. O'Brien, 391 U.S. 367, 377 (1968), concluding that Ordinance No. 17613 restricted First Amendment rights more than necessary to further an important government interest. The court rested its decision on its conclusion that Ordinance No. 17613 was facially overbroad, rather than on any application of the ordinance to Mataya's.

_____

[3] The district court concluded that this case is not moot under the voluntary cessation doctrine, which applies when there is nothing to prevent a defendant from returning to "his old ways." City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 n.10 (1982). No one has raised a question of mootness on appeal, and since the fee award is part of the appeal, the constitutionality of the repealed ordinance needs to be addressed even if there were no prospect of reinstatement of the original ordinance.

The court granted Ways a permanent injunction and nominal damages of $1.00, as well as $5,693.10 in attorney fees and $630.14 in costs. The fee award reflected a reduction in the requested hourly rate and hours and application of a discount to reflect the degree of success. The court noted that Ways had not followed a local rule requiring evidence in support of a fee application, and it therefore picked an hourly rate based on its own "past experience when there <u>was</u> evidence" (emphasis in original). The city appeals from the judgment.

The City of Lincoln argues that Ordinance No. 17613 was not overbroad because it did not significantly compromise First Amendment rights and would not be unconstitutional applied to Mataya's. It also asserts that the district court abused its discretion in assigning hourly rates without evidence from Ways and in awarding fees beyond what was justified. Ways argues that the ordinance is overbroad because it covers conduct in "any business or commercial establishment," not merely in adult entertainment facilities, and because it would restrict constitutionally protected artistic expression, such as theater and ballet performances. Ways also supports the award of fees and costs.

The First Amendment protects "live entertainment, such as musical and dramatic works," <u>Schad v. Borough of Mount Ephraim</u>, 452 U.S. 61, 65 (1981), and artistic expression containing nudity or simulated sexual conduct. <u>See</u> <u>Southeastern Promotions Ltd. v. Conrad</u>, 420 U.S. 546, 550, 557-58 (1975) (<u>Hair</u> is protected speech despite "group nudity and simulated sex"); <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 933 (1975) (artistic performances involving nudity have "unquestionable artistic and socially redeeming significance"). Our review of the First Amendment issue is de novo. <u>Planned Parenthood v. Dempsey</u>, 167 F.3d 458, 461 (8th Cir. 1999)

An ordinance prohibiting a broad range of protected expression may be facially challenged as overbroad. <u>Members of City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 796 (1984). Under the overbreadth doctrine, "an individual

whose own speech or conduct may be prohibited is permitted to challenge a statute on its face 'because it also threatens others not before the court – those who desire to engage in legally protected expression but who may refrain from doing so.'" Board of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574 (1987), quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503 (1985).  The rationale for allowing an individual to assert the constitutional rights of others not before the court is that "broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." Taxpayers for Vincent, 466 U.S. at 798.  The overbreadth doctrine is "strong medicine" to be used "sparingly" and only when the overbreadth is not only "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Broadrick v. Oklahoma, 413 U.S. 601, 613, 615 (1973).

A successful overbreadth claim must show that a challenged statute will "compromise recognized First Amendment protections of parties not before the [c]ourt" who engage in "conduct more likely to be protected by the First Amendment than [plaintiff's] own [conduct]." Taxpayers for Vincent, 466 U.S. at 801, 802. Ballet and theater performances receive greater First Amendment protection than nude dancing, and Ordinance No. 17613 could have been enforced to prohibit the type of simulated sex to be found in productions of Hair.  The ordinance could also have been enforced to prohibit stage actors from kissing and ballet dancers or ice skaters from lifting each other by the buttocks, if such acts could "reasonably be construed" to be for the "sexual arousal or gratification" of any observer or performer.

If a statute infringes upon a protected liberty, it must be narrowly tailored to further a sufficiently substantial government interest. Schad, 452 U.S. at 68.  The original Lincoln ordinance sought to deter immorality and to curb "prostitution, assaultive behavior, and other related criminal behavior." The government has a sufficiently substantial interest in curbing such secondary effects, see Barnes v. Glen Theatre, Inc., 501 U.S. 560, 569 (1991) (plurality opinion) (substantial government

interest in protecting morality); City of Erie v. Pap's A.M., 529 U.S. 277, 290-91 (2000) (plurality opinion) (substantial government interest in curbing secondary effects of adult entertainment businesses), but Ordinance No. 17613 was not tailored to combat only them and swept further than necessary. It did not exclusively cover conduct in adult entertainment businesses, which has been recognized to cause harmful secondary effects, see Pap's A.M., 529 U.S. at 296-97, but also covered conduct in "any business or commercial establishment," which could include theater performances, ballet performances, and many other forms of live entertainment. The Lincoln City Council referred to no findings that theatrical kissing and ballet lifts cause harmful secondary effects. The city's secondary effects rationale was therefore "open to question" in respect to Ordinance No. 17613 because it could have been enforced to bar expressive conduct in classes of productions not readily analogous to adult type entertainment. See Farkas v. Miller, 151 F.3d 900, 904 (8th Cir. 1998), quoting Barnes, 501 U.S. at 585 n.2 (Souter, J., concurring). Under such circumstances, the city was obligated to "make some demonstration of an evidentiary basis for the harm it claims to flow from the expressive activity." Pap's A.M., 529 U.S. at 313 (Souter, J., dissenting from judgment). Because the ordinance burdened First Amendment expression that has not been shown clearly to contribute to the problems the city sought to solve, it was not appropriately tailored to achieve its stated purposes.

Ordinance No. 17613 was unlike the Iowa law found not to be overbroad in Farkas, 151 F.3d at 905. The Farkas statute prohibited the "actual or simulated public performance of any sex act" and the exposure of erogenous zones of the body in businesses operating under a sales tax permit, id. at 901, but it contained an exception in its application for "a theater, concert hall, art center, museum, or similar establishment which is primarily devoted to the arts or theatrical performances," id. at 902. The Iowa statute was directed at performance of sex acts rather than the broader "sexual contact" defined in Ordinance No. 17613, and it also prohibited certain types of nudity while the Lincoln ordinance applied whether the body parts

were covered or not. The most significant difference, however, is that Ordinance No. 17613 did not contain any exception for artistic venues like the Iowa statute and like Lincoln's new Ordinance No. 17657.[4]

Even if a statute is overbroad, it may be saved by a limiting construction that removes the threat to constitutionally protected speech. Broadrick, 413 U.S. at 613. A limiting construction cannot be supplied unless an ordinance is "readily susceptible" to such an interpretation, see State of Va. v. Am. Booksellers Ass'n, 484 U.S. 383, 397(1988), because federal courts "lack jurisdiction authoritatively to construe state legislation." Gooding v. Wilson, 405 U.S. 518, 520 (1972), quoting United States v. Thirty-Seven Photographs, 402 U.S. 363, 369 (1971). Limiting constructions of state and local legislation are more appropriately done by a state court or an enforcement agency. Ward v. Rock Against Racism, 491 U.S. 781, 795-96 (1989). The city claims that Ordinance No. 17613 was not intended to apply to artistic venues, but such an exception was not contained in it nor is the statute readily susceptible to such an interpretation. The repeal of the ordinance and enactment of a new one containing such an exception show the difference and show how easy it was for the city to makes its intent clear.

The city also emphasized at oral argument that the ordinance would not reach theater or ballet performances because it required intentional touching that "can reasonably be construed as being for the purpose of sexual arousal" and because artistic performances would never have met this element. The city overlooks that the ordinance prohibited such touching for the "gratification of either party or any observer," and a far greater range of conduct may be directed toward "gratification" than toward "sexual arousal." Even if the prohibitions were interpreted to reach only

---

[4] Farkas was decided in 1998, quite some time before the passage of Ordinance No. 17613 on February 22, 2000, so the Iowa statute could have provided a model which had survived constitutional challenge.

conduct intending sexual arousal, the city's net was still cast too broadly because constitutionally protected artistic expression may legitimately intend to titillate or arouse members of the audience.

Finally, the city challenges every aspect of the district court's award of fees and costs, except for the downward adjustment to reflect incomplete success at trial. The city argues in particular that the district court abused its discretion in choosing an hourly rate without submission of evidence by the moving party. Ways responds that the district court acted within the scope of its discretion. Randolph v. Rogers, 170 F.3d 850 (8th Cir. 1999). Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) guides courts to start with "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." The district court adopted at least one hourly rate recommended by the city and chose other hourly rates favorable to it in order "to capture [the] attention" of plaintiff's counsel. The district court's award of fees and costs reflects its long experience with hourly rates and its careful scrutiny of the fee request, and it was well within the scope of its discretion.

For these reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.