

Opinions of the United
States Court of Appeals
for the Third Circuit

12-12-2003

# Conchatta Inc v. Evanko

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-2220

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Conchatta Inc v. Evanko" (2003). *2003 Decisions.* Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2220

CONCHATTA, INC., t/d/b/a CLUB
RISQUE ON THE DELAWARE; GAIL
BAKER; SABRINA BARRAR,

v.

PAUL J. EVANKO, COL., IN HIS
OFFICIAL CAPACITY AS COMMISSIONER,
PENNSYLVANIA STATE POLICE

Conchatta, Inc., Gail Baker
and Sabrina Barrar,

Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-01207)
District Judge: Honorable John P. Fullam

Argued January 15, 2002

Before: ALITO and ROTH, Circuit Judges
SCHWARZER*, District Judge

(Opinion filed December 12, 2003)

_____ * Honorable William W Schwarzer, Senior District Judge for the Northern District
of California, sitting by designation.

J. Michael Murray, Esquire (Argued)
Steven D. Shafron, Esquire
Berkman, Gordon, Murray & DeVan
55 Public Square
2121 The Illuminating Building
Cleveland, OH   44113-1949

      Attorney for Appellants

D. Michael Fisher
Attorney General
John O. J. Shellenberger, III (Argued)
Chief Deputy Attorney General
Calvin R. Koons
Senior Deputy Attorney General
John G. Knorr, III
Chief Deputy Attorney General,
Chief, Appellate Litigation Section
Office of Attorney General of Pennsylvania
21 South 12th Street
Philadelphia, PA   19107

      Attorney for Appellee

---

OPINION

---

PER CURIAM:

This is an appeal from a District Court order denying a request for a preliminary injunction against the Pennsylvania Liquor Code's ban on "lewd, immoral or improper entertainment." 47 P.S. § 4-493(10).   We affirm.

I.

2

Plaintiff Conchatta, Inc. operates a "gentleman's club" in Philadelphia and holds a liquor license. The other two plaintiffs, Gail Baker and Sabrina Barrar, are erotic dancers at the club. The dancers begin clothed and then strip until they are wearing only G-strings and latex covering over their nipples. They then circulate among the patrons seeking tips. There are also rooms in which dancers perform private dances for a fee. The club prohibits physical sexual contact between the dancers and patrons.

A provision of the Pennsylvania Liquor Code dating back to 1951, 47 P.S. § 4-493 (10), prohibits "lewd, immoral, or improper entertainment" in a facility holding a liquor license or in any place operated in connection therewith, and an implementing regulation, 40 Pa. Code § 5.32(c), contains similar language. The plaintiffs moved for a preliminary injunction against the enforcement of these provisions, and the District Court, after conducting an evidentiary hearing, denied the motion. The District Court noted that in California v. LaRue, 409 U.S. 109 (1972), and subsequent cases the Supreme Court upheld the constitutionality of laws prohibiting nude or lewd entertainment in establishments serving alcohol. The Court also observed that, while the Supreme Court's opinion in 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996), disapproved of some of the reasoning in LaRue, the Court "made clear that it was not retreating from the holding in California v. LaRue." Dist. Ct. Op. at 4. The District Court stated that its review of Supreme Court precedent led it to the conclusion that the plaintiffs' likelihood of success was "uncertain at best." Id. at 5.

3

The District Court noted that the plaintiffs also challenged the statute and regulation based on overbreadth and vagueness, but the Court "decline[d] to address these issues, at this juncture" and instead "abstained, in deference to pending state court litigation, under Railroad Commission of Texas v. Pullman Company, 312 U.S. 496 (1941)." Id. at 6. The District Court commented that the statute and regulation at issue in this case were then before the Supreme Court of Pennsylvania in Purple Orchid, Inc. v. Pennsylvania State Police, 721 A.2d 84 (Pa. Commw. 1998), appeal granted, 740 A.2d 1150 (Pa. 1999), and that related issues were also before that Court in the remand from the United States Supreme Court in City of Erie v. Pap's A.M., 529 U.S. 277 (2000). Dist. Ct. Op. at 6. The District Court then wrote:

> In my view, the only issue it is appropriate for this court now to consider is whether, pending the state courts' action, plaintiffs are likely to suffer irreparable harm which should be prevented by preliminary injunctive relief. On the basis of the evidentiary record, I am not convinced that any significant harm will be sustained by any of the plaintiffs. So far as the record discloses, the plaintiffs have never been cited for violating the statute or regulations, and there is no imminent threat of such action. The only evidence presented at the hearing was to the effect that the two dancers would prefer to be allowed to dance without any covering on their nipples, and the club would prefer to present that form of entertainment to its customers. Whether there is any cognizable difference in self-expression between what the individual plaintiffs are now doing and what they say they would prefer is indeed problematic. If there is a difference, I am satisfied that it represents such a minimal restriction on their right of self-expression that it may safely be ignored as a basis for interim injunctive relief.

Id. at 6-7. This appeal followed.

When we heard oral argument in this case the two Pennsylvania Supreme Court

4

cases to which the District Court had referred were still pending. Some time later, however, the Pennsylvania Supreme Court handed down decisions in both cases. In Pap's A.M. v. City of Erie, 812 A.2d 591 (Pa. 2002) (Pap's III), which concerned an establishment that featured totally nude erotic women dancers, the Pennsylvania Supreme Court held that a municipal ordinance prohibiting public nudity violated the freedom of expression provision of Article I, § 7 of the Pennsylvania Constitution. The Court concluded that nude dancing is expressive conduct and reasoned that the fact that nude dancing does not ascend to the "level of high art form" does not mean that "the expression is unprotected." Id. at 602-03.

In the second case, Purple Orchid Inc. v. Pennsylvania State Police, 813 A.2d 801 (Pa. 2002), the Pennsylvania Supreme Court affirmed the Commonwealth Court's decision that § 4-493(10), the provision at issue in the present case, does not violate the First Amendment of the United States Constitution. The Court held that § 4-403(10), as applied to nude dancing in an establishment holding a liquor license, is a content-neutral restriction on expressive conduct which must be subjected to intermediate scrutiny under the four-factor test of United States v. O'Brien, 391 U.S. 367 (1968). 813 A.2d at 809, 812. The Court did not decide whether § 4-493(10) violates the guarantee of freedom of expression found in Article I, § 7 of the Pennsylvania Constitution or whether § 4-493(10) is void for vagueness because the Court held that appellants had waived both issues. 813 A.2d. at 804-05.

After the Pennsylvania Supreme Court issued its opinions in these two cases, we received supplemental briefs addressing their impact on this appeal.

## II.

The primary issue before us concerns the District Court's refusal to grant a preliminary injunction.[1]  Under the familiar standard for granting a preliminary injunction, a plaintiff must show both (1) that the plaintiff is reasonably likely to succeed on the merits and (2) that the plaintiff is likely to experience irreparable harm without the injunction.  Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).  If these

---

[1]The plaintiffs have asked us to review the District Court's decision to grant the stay. We need not do so because the  appeals have been decided and the issue is now moot. We note, however, that were the issue ripe for review, we still would not have jurisdiction to do so because the District Court's stay was not a final order under either 28 U.S.C. § 1291 or the collateral order doctrine.

As a rule, a "stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff effectively out of court."  Moses H. Cone v. Mercury Construction Co., 460 U.S. 1, 10 n.11 (1983).  As we have noted, stay orders that merely have the practical effect of allowing a state court to be the first to rule on a common issue are not appealable.  Trent v. Dial Medical of Florida Inc., 33 F.3d 217, 221 (3d Cir. 1994) (quoting Moses H. Cone).  Nor do we find that plaintiffs fell under the exception to this rule noted in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 714 (1962), because unlike the plaintiff in Idlewild, plaintiffs here were not effectively out of court when the stay was granted.  See Wright, Miller & Cooper 15A Federal Practice and Procedure § 3914.14.

Nor did we have jurisdiction to review the stay under the collateral order doctrine. That doctrine creates a narrow exception allowing us to review certain orders before a final judgment on the merits.  Under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), such an order must (1) finally resolve a disputed question, (2) raise an important issue distinct from the merits of the case, and (3) be effectively unreviewable on appeal from a final judgment.  We conclude that the District Court's stay order did not finally resolve a disputed question nor did it raise an important issue distinct from the merits; it merely caused a delay.

factors are shown, the effect on the nonmoving parties and the public interest may be considered. Id. at 484. In a preliminary injunction appeal, we review legal questions, including plaintiffs' likelihood of success on the merits of their First Amendment claims, de novo. ACLU v. Reno, 217 F.3d 162, 172 (3d Cir. 2000), vacated on other grounds, 122 S.Ct. 1700. The District Court's overall decision to deny injunctive relief is reviewed for abuse of discretion, "which occurs if the district court's decision rests on a clearly erroneous finding of fact, an error of law, or a misapplication of law to the facts." Marco v. Accent Publishing Co., 969 F.2d 1547, 1548 (3d Cir. 1992).

## III.

We first address the issue of the plaintiffs' likelihood of success on the merits. The plaintiffs' complaint challenges the statute both on its face and as applied, but the plaintiffs have not raised the as-applied argument on appeal. In their brief, the plaintiffs argue forcefully and at length that they established a likelihood of success for two reasons and two reasons only. In Part I.A of their brief, the plaintiffs contend that the statute and regulation are unconstitutionally overbroad, see Appellants' Br. at 19-41, and in Part I.B the plaintiffs maintain that the statute and regulation are unconstitutionally vague. Id. at 42-53. The plaintiffs do not argue that they established a likelihood of success on their as-applied claim[2], and therefore we do not decide that issue. "We generally do not raise

---

[2]The mere mention of the phrase "as applied" in the statement of the issues in the appellants' brief is insufficient to raise that issue. See In re Trans World Airlines, 145 F.3d 124, 133 (3d Cir. 1998); Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("an

7

new issues on our own motion unless federal jurisdiction is implicated," <u>Bolden v. Southwestern Pa. Transp. Auth.</u>, 953 F.2d 807, 821 (3d Cir. 1991) (en banc), and there is no good reason to depart from that rule here.

While the plaintiffs have not adequately pressed an as-applied argument on appeal, they have made a strong case that the statute is overbroad. During the past 30 years, the United States Supreme Court has issued a string of opinions dealing with the subject of erotic dancing, both in bars and other establishments, but the central language in the Pennsylvania statute has not been revamped in more than a half-century. We need not decide, however, whether the Pennsylvania statute as currently framed will ultimately be able to withstand a challenge for either overbreadth or vagueness. For present purposes we will assume that the plaintiffs established a likelihood of success on their overbreadth and vagueness claims. As we explain below, the plaintiffs are nevertheless not entitled to a preliminary injunction because, as the District Court held, the plaintiffs failed to show that the denial of their motion for a preliminary injunction would result in irreparable harm.

---

argument consisting of no more than a conclusory assertion . . . will be deemed waived"); <u>Southwestern Pa. Growth Alliance v. Browner</u>, 121 F.3d 106, 122 (3d Cir. 1997) ("appellate courts should generally not address legal issues that the parties have not developed through proper briefing"); <u>Commonwealth of Pa. v. HHS</u>, 101 F.3d 939, 945 (3d Cir. 1996) (arguments mentioned in passing but not squarely argued will be deemed waived); <u>Laborers' Intern. Union v. Foster Wheeler Energy</u>, 26 F,3d 375, 398 (3d Cir. 1994) ("'a passing reference to an issue . . . will not suffice to bring that issue before this court'") (citation omitted).

8

IV.

Our Court has held that a plaintiff must show irreparable harm in order to obtain a preliminary injunction. Adams v. Freedom Forge, 204 F.3d 475, 484 (3d Cir. 2000); Instant Air Freight Co. v. C.F. Air Freight, 882 F.2d 797, 800 (3d Cir. 1989); Marxe v. Jackson, 833 F.2d 1121, 1128 (3d Cir. 1987). "We have repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." Adams, 204 F.3d at 487. While other circuits relax the irreparable harm requirement in First Amendment cases, our Court requires a First Amendment plaintiff seeking a preliminary injunction to prove irreparable harm. In Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir. 1989), we observed that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury." Instead, we wrote, "plaintiff[] must show 'a chilling effect on free expression.'" Id. In Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997), we held that plaintiffs who had shown a likelihood of success on the merits of their First Amendment claim would not be entitled to preliminary injunctive relief unless they could show a "'real or immediate'" danger to their rights "in the near future." Id. at 164. Although Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion), observed that the "loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury," we provided the following explanation in Anderson:

9

In <u>Elrod</u>, the Supreme Court held that public employees had a First Amendment right not to be fired solely because of their affiliation with a political party. Nothing in that case suggests that the Court meant to do away with the traditional prerequisites for injunctive relief simply because First Amendment freedoms were implicated. To the contrary, the Court concluded that injunctive relief was warranted because the plaintiffs' First Amendment injuries were "both threatened and occurring at the time of respondents' motion." <u>Elrod</u>, 427 U.S. at 374, 96 S. Ct. at 2690.

<u>Id</u>.[3]

In the present case, the plaintiffs did not show that there was a real or immediate threat to their own First Amendment rights. As noted by the District Court, "[s]o far as the record discloses, the plaintiffs have never been cited for violating the statute or

---

[3]The statement in <u>Elrod</u> that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" addresses the requisite <u>duration</u> of a deprivation of First Amendment rights, but does not suggest that a real or threatened deprivation need not occur. In several cases, we have quoted this statement in the course of holding that irreparable injury had been shown, but in all those cases actual or threatened irreparable harm was shown. <u>See</u> <u>Tenafly Eruv Assoc. v. The Borough of Tenafly</u>, 309 F.3d 144, 178 (3d Cir. 2002) (disabled persons and persons with small children unable to attend synagogue); <u>Swartzwelder v. McNeilly</u>, 297 F.3d 228, 241 (3d Cir. 2002) (police officer with "demonstrated proclivity to offer expert testimony" prevented from doing so); <u>ACLU v. Reno</u>, 217 F.3d 162, 180 (3d Cir. 2000), <u>vacated on other grounds</u>, <u>Ashcroft v. ACLU</u>, 535 U.S. 564 (2002) (web publishers prevented from publishing materials held to be constitutionally protected); <u>Abu-Jamal v. Price</u>, 154 F.3d 128, 136 (3d Cir. 1998) (unconstitutional investigation "both threatened and occurring"); <u>In re Asbestos School Litigation</u>, 46 F.3d 1284, 1294-95 (3d Cir. 1994) (company precluded from engaging in public dialogue on important issue). <u>Cf.</u> <u>In re School Asbestos Litigation</u>, 842 F.2d 671, 679 (3d Cir. 1988) (in applying collateral order doctrine, court holds that loss of right to engage freely in public communications is irreparable injury). It is true that in one of the above cases, we quoted the statement that "[i]n a First Amendment challenge," a plaintiff who establishes a likelihood of success "will almost certainly" show irreparable harm. <u>ACLU v. Reno</u>, 217 F.3d at 180 (<u>quoting</u> <u>ACLU v. Reno</u>, 929 F. Supp. 824, 866 (E.D. Pa. 1996)). But this statement is dictum in an opinion that has been vacated and is inconsistent with governing circuit precedent.

regulations, and there is no imminent threat of such action." Dist. Ct. Op. at 7. The operator of Club Risque did not offer evidence that the enforcement of the challenged statute and regulation presented a threat of economic harm. The full extent of the plaintiffs' showing on irreparable harm is found in the dancers' testimony, which is summarized as follows in the plaintiffs' brief:

> Gail Baker . . . testified that because she does not know what is embraced by the regulations, she has danced differently than she otherwise would, for if she moved her hips a certain way, it might be construed as being illegal. Sabrina Barrar, too, testified that uncertainty in the law altered her performances.

Appellants' Br. at 60.

It is important to note that the plaintiffs have not made an as-applied argument on appeal, and accordingly they have not shown that the statute likely violates their own First Amendment rights by inhibiting their dancing in the ways noted above. In view of this fact, the fact that the only apparent effects on the dancers are self-imposed, the fact that the statute has not been enforced or threatened to be enforced against the plaintiffs, and the fact that no economic harm has been claimed, we cannot say that the District Court erred in concluding that irreparable harm was not established.

V.

For these reasons, we will affirm the order of the District Court denying the plaintiffs' request for a preliminary injunction.

11

**ROTH**, Circuit Judge, **dissenting**.

I respectfully dissent. I disagree with the majority that the denial of plaintiffs' motion for a preliminary injunction would not result in irreparable harm. The plaintiff dancers have already suffered irreparable harm and will continue to suffer irreparable harm if their motion for a preliminary injunction is not granted.

As to the plaintiffs' facial challenge to § 4-493(10), the majority simply assumes likelihood of success on the merits only to conclude that the plaintiffs did not meet their burden of proving irreparable harm. I find it relevant to the discussion of irreparable harm to first consider the plaintiffs' probability of success on their facial challenge.

### I. Probability of success on the merits

The majority notes that the plaintiffs "have made a strong case that the statute is overbroad." Majority at _ [typescript at 8]. Indeed, this overbreadth argument has merit and presents a ground upon which plaintiffs are likely to succeed in their challenge of the constitutionality of § 4-493(10).

"A regulation is unconstitutional on its face on overbreadth grounds where there is 'a likelihood that the statute's very existence will inhibit free expression' by 'inhibiting the speech of third parties who are not before the Court.'" Saxe v. State College Area Sch. Dist., 240 F.3d 200, 214 (3d Cir. 2001) (quoting Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 799 (1984)). It is, of course, necessary to proceed

12

with caution and restraint when considering a facial challenge. <u>Erznoznik v. City of Jacksonville</u>, 422 U.S. 205, 216 (1975). Nevertheless, § 4-493(10) runs afoul of the overbreadth doctrine by penalizing a "substantial amount of speech that is constitutionally protected." <u>Forsyth County, Georgia v. Nationalist Movement</u>, 505 U.S. 123, 129 (1992) (quoting <u>Broadbrick v. Oklahoma</u>, 413 U.S. 601 (1973)).

As an initial matter, § 4-493(10)'s language prohibiting "lewd, immoral, or improper entertainment" in a liquor-licensed establishment encompasses a wide range of constitutionally protected expression. The reach of § 4-493(10) was substantially expanded when the legislature extended its coverage to include all places "operated in connection" with licensed premises, including a vast number of halls or theaters in which live musical, concert, dance, ballet, and "legitimate" play productions are performed. 47 P.S. § 4-493(10); 47 P.S. § 4-413(g); 47 P.S. § 1-102. Thus, the Liquor Code establishes a standard of propriety governing a number of plays, musicals, concerts, political satires, comedies, ballets, dramas, singing performances, dancing performances, poetry readings, and art shows throughout Pennsylvania. It gives Pennsylvania police officers wide latitude to choose which one of these performances to penalize on the ground that they are lacking in propriety. Indeed, the Commonwealth admitted as much at oral argument, when it stated that, in theory, officers could cite a performance of the musical "Hair"

13

under § 4-493(10).[4]

By its terms, therefore, § 4-493(10) prohibits a great deal of protected speech. The overbreadth doctrine does not allow such chilling of free expression if it could be avoided by a more carefully drafted statute. Reno v. ACLU, 521 U.S. 844, 874 (1997); Erznoznik, 422 U.S. at 217-18 ("precision of drafting and clarity of purpose are essential" where First Amendment freedoms are at stake); Carandola, Ltd. v. Bason, 303 F.3d 507, 516-18 (4th Cir. 2002). The Pennsylvania legislature violated this requirement when it imposed the far-reaching prohibitions of § 4-493(10).

Unable to defend § 4-493(10) as it is written, the Commonwealth vigorously argues that the statute's application is not nearly as broad as its terms suggest. At oral argument, the Commonwealth asserted that the statute operates only as a prohibition on nude dancing. Thus, it reasons, § 4-493(10) would seem no more objectionable than ordinances approved by the Supreme Court in City of Erie v. Pap's A.M., 529 U.S. 277 (2000) and Barnes v. Glen Theater, Inc., 501 U.S. 560 (1991).

Here though, the reach of § 4-493(10) exceeds the narrow construction proffered by the Commonwealth on appeal. Because of the breadth of § 4-493(10)'s language, it is not clear what entertainment the Pennsylvania regulators will penalize. Would it be immoral or improper to celebrate Bloomsday by reading aloud from James Joyce's

---

[4] In the context of a prior restraint analysis, the Supreme Court has held that "Hair" is protected speech despite its use of "group nudity and simulated sex." Southeastern Promotions Ltd. v. Conrad, 420 U.S. 546, 550, 557-58 (1975).

*Ulysses* in an Irish pub?  And how would the Liquor Commission view "brew and view" theaters showing films such as *Trainspotting*, *American Pie*, or *Lolita*?  These questions become increasingly troublesome in light of the sheer amount of entertainment at performing arts facilities that is now subject to this vague standard of propriety.  See Ways v. City of Lincoln, Neb., 274 F.3d 514, 519 (8th Cir. 2001) (when finding that ordinance prohibiting "sexual contact" was overbroad, court found ordinance's broad application to artistic venues "most significant" in distinguishing it from more limited ordinances that were constitutional).  A broad array of entertainment appears well within the bounds of the state's regulatory authority under § 4-493(10), but there is no way to tell whether certain performances would in fact be banned.  The broad terms of § 4-493(10) leave such decisions to the discretion of Pennsylvania officials and, in so doing, those terms violate the requirements of the First Amendment.  This unbridled government discretion, leaving a wide degree of latitude for value judgments as to artistic merit, is precisely what the First Amendment does not allow.  See Carandola, 303 F.3d at 516-18.

Thus, the fact that § 4-493(10) creates a standard of propriety applicable to a broad array of entertainment throughout Pennsylvania cannot be avoided.  The statute's terms create such a real and substantial restriction on speech that they violate the overbreadth doctrine.  The District Court erred by overlooking this meritorious legal argument when it denied plaintiffs' request for a preliminary injunction.

Furthermore, Pap's A.M. v. City of Erie, 812 A.2d 591 (Pa. 2002) and Purple

15

Orchid Inc. v. Pennsylvania State Police, 813 A.2d 801 (Pa. 2002), the two recently decided Pennsylvania Supreme Court cases that the majority discusses briefly, illustrate that the Pennsylvania Supreme Court, when confronted with the right challenge, will have the opportunity to address the overbroad nature of § 4-493(10).

In Pap's A.M. v. City of Erie, the Pennsylvania Supreme Court held that the City of Erie's public decency ordinance violated the freedom of expression provision of Article I, § 7 of the Pennsylvania Constitution, and severed the unconstitutional provisions from the ordinance. 812 A.2d at 602-03. Because the court held that the ordinance violated the Pennsylvania Constitution, it did not go on to consider whether the ordinance was unconstitutionally overbroad, an issue on which the court had requested the parties to provide briefing. Id. at 599, 613 n.11.

In Purple Orchid Inc. v. Pennsylvania State Police, the Pennsylvania Supreme Court affirmed the Commonwealth Court's decision that § 4-493(10) does not violate the First Amendment of the U.S. Constitution. The court held that § 4-493(10), as applied to nude dancing in an establishment holding a liquor license, is a content-neutral restriction on expressive conduct which must be subjected to intermediate scrutiny under the four-factor O'Brien test. Purple Orchid, 813 A.2d at 809, 812.

The court was careful, however, to point out what it was not deciding. The court did not address whether § 4-493(10) violates the guarantee of freedom of expression found in Article I, § 7 of the Pennsylvania Constitution. Nor did the court address

16

whether § 4-493(10) is unconstitutional for vagueness, because lewd, immoral, or improper entertainment is incapable of being discerned in advance, or whether § 4-493(10) is unconstitutionally overbroad. The court held that the appellants had waived those issues. Id. at 804-05. The court in Purple Orchid made very clear that it was interpreting § 4-493(10) only as applied to the nude dancing involved there. The language of § 4-493(10) is certainly broader than a ban on nudity. Indeed, as the court noted, "nudity, much less nude dancing" is not specifically mentioned in the statute. Id. at 809.

## II. Irreparable Injury

Because the District Court failed to recognize that § 4-493(10)'s restrictions violate the First Amendment, it also failed to properly analyze irreparable injury. When the record considered by the District Court is evaluated under the proper legal standard, it is plain that the court abused its discretion when it denied plaintiffs' request for a preliminary injunction.

First, irreparable injury should have been considered under the general rule that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Plaintiffs have shown irreparable injury under this rule.

The entertainment regulated by § 4-493(10) is not limited to the spoken or written

17

word. It is not, however, just the spoken or written word which is protected by the First Amendment. Conduct other than that which is spoken or written may also be protected if it presents "sufficient communicative elements" to constitute expression. Texas v. Johnson, 491 U.S. 397, 404 (1989). There is no doubt that dancing may contain sufficient communicative elements to justify First Amendment protections. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 66 (1981) ("nude dancing is not without its First Amendment protections from official regulation").

Because dancing is conduct that may be protected by the First Amendment, the fact that the dancing is erotic or sexually suggestive does not then strip it of its First Amendment protection. Such dancing receives the same degree of protection as other forms of communication. As we have stated, "[s]peech, be it in the form of film, live presentations, or printed matter, that is sexually explicit in content but not 'obscene' is protected under the First Amendment." Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir. 1997) (en banc); see also Sable Communications v. FCC, 492 U.S. 115, 128 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment").

Plaintiff Gail Baker testified that Pennsylvania's regulations inhibit her performances because she is required by her employer to wear latex covering over her nipples when dancing and because, when dancing, "I really don't know if what I'm doing is going to be interpreted as illegal – I can move my hips a certain way and maybe, that

18

would be interpreted as illegal."  Plaintiff Sabrina Barrar also testified that the law creates

"a cloud . . . over my performance, because your rendition of lewd and mine, might be

two different things and I feel that it holds back on everything you do as a dancer . . . ."

The plaintiffs are subject to prosecution under an unconstitutional statute, and

plaintiffs Barrar and Baker testified that because of their uncertainty as to what the

regulation prohibits and their fear of being found in violation, they have had to restrain

their performances.  Thus, plaintiffs have shown § 4-493(10) to have a "chilling effect on

free expression." Hohe v. Casey, 868 F.2d 69, 73 (3d Cir. 1989) (quoting Dombrowski v.

Pfister, 380 U.S. 479, 487 (1965)).  See also Carandola, 303 F.3d at 521 (citing Elrod v.

Burns, 427 U.S. 347, 373 (1976) in support of finding irreparable injury resulting from

threat of enforcement of public decency statute).

The majority concludes that the plaintiffs have not shown irreparable injury

because there was no real or immediate threat to their own First Amendment rights when

they requested a preliminary injunction.  Majority at _ [typescript at 10-11].  The majority

also stated:

> It is important to note that the plaintiffs have not made an as-applied
>
> argument on appeal, and accordingly they have not shown that the statute
>
> likely violates their own First Amendment rights by inhibiting their dancing
>
> in the ways noted above.  In view of this fact, the fact that the only apparent
>
> effects on the dancers are self-imposed, the fact that the statute has not been

19

enforced or threatened to be enforced against the plaintiffs, and the fact that no economic harm has been claimed, we cannot say that the District Court erred in concluding that irreparable harm was not established.

Majority at _ [typescript at 11].

Even though the plaintiffs may not have made an as-applied argument on appeal, they have shown that § 4-493(10) violates their own First Amendment rights by inhibiting their dancing. Injury to the plaintiffs' own First Amendment rights was both "threatened and occurring at the time of the . . . [plaintiffs'] motion" for a preliminary injunction. Elrod, 427 U.S. at 374. The overbroad nature of §4-493(10) operates to unconstitutionally constrain the plaintiffs' First Amendment right to free expression. What the plaintiff dancers say they feel they cannot do may seem trivial to some, but as the District Court noted in the preliminary injunction hearing, it is not trivial to the dancers. Moreover, the plaintiff dancers' fear of being found in violation of § 4-493(10) is reasonable in light of the breadth of the statute. This constraint is the loss of a First Amendment freedom which "unquestionably constitutes irreparable injury." Elrod, 427 U.S. at 373.

Even though § 4-493(10) has not been enforced against the plaintiffs, the defendant admitted in its amended answer to plaintiffs' complaint that the Bureau of Liquor Control Enforcement has cited restaurant and club licensees for violations of § 4-

20

493(10).  Moreover, the statute has been enforced in similar circumstances, as shown in

Purple Orchid Inc. v. Pennsylvania State Police, 813 A.2d 801 (Pa. 2002). The defendant

offered no evidence that it does not intend to cite the plaintiffs for a violation of § 4-

493(10), and there is no reason to believe that the defendant will not subject the plaintiffs

to the same citations it has issued to other restaurants and clubs if the injunction is not

granted.  What follows is that, if the plaintiffs' motion for a preliminary injunction is not

granted, the defendants are free to enforce this unconstitutionally overbroad statute

against the plaintiffs.  In light of this reality, it is reasonable to conclude that the plaintiffs

are in fact threatened with imminent enforcement of the statute, and therefore face

irreparable injury.  See 414 Theater Corp. v. Murphy, 499 F.2d 1155, 1160 (2nd Cir. 1974)

(finding irreparable injury because widespread enforcement and attempted enforcement

against others constituted threat of imminent prosecution).

The plaintiffs have alleged a loss of First Amendment freedoms, even though an

allegation of economic loss alone may have been sufficient to show irreparable injury.

See Doran v. Salem Inn, Inc., 422 U.S. 922, 930-931 (1975).  In Doran v. Salem Inn, Inc.,

three businesses that operated bars with topless dancing brought an action challenging an

ordinance requiring the dancers to wear bikini tops and sought a preliminary injunction

from enforcement of the ordinance.  The day after commencing the action, one of the

businesses resumed providing topless dancing, and the town served criminal summonses

on the business and its dancers for violating the ordinance.  The other two businesses

21

complied with the ordinance. <u>Doran</u>, 422 U.S. at 924-925. As to the two complying businesses, the Supreme Court held that the district court did not abuse its discretion when it granted their request for a preliminary injunction because an allegation of loss of business and potential bankruptcy was sufficient to show irreparable injury, even though no state proceedings had been commenced against them. <u>Id</u>. at 930, 932. Here, the plaintiffs have alleged more than economic injury. They have alleged a loss of First Amendment freedoms as a result of an unconstitutionally overbroad statute. Whereas economic loss may have an adequate remedy at law, there is no remedy at law to compensate for the loss of First Amendment freedoms. Thus, the plaintiffs have satisfied their burden of proving irreparable harm.

Finally, the constraint on the dancers' free expression is not self-imposed. The unconstitutionally overbroad statute places the plaintiff dancers in the unfortunate position of having to choose between exercising their First Amendment rights and facing the prospect of violating § 4-493(10) or changing the way they exercise their First Amendment rights. Whatever the dancers choose, irreparable injury results. The first choice,

> violating the law to exercise one's constitutional rights and awaiting the
> sure hand of the law--itself may cause . . . irreparable injury both economic
> (in the form of loss of revenue because customers are fewer and increase in
> costs due to the difficulty of finding employees willing to risk arrest,

22

prosecution and possible imprisonment) and personal (the freedom to exercise first amendment rights without genuine fear of prosecution).

414 Theater Corp.,499 F.2d at 1160. The second choice also "involves a deprivation of . . .[the plaintiffs'] first amendment rights . . . and in itself constitutes irreparable injury justifying injunctive relief, because there is no means to make up for the irretrievable loss of that which would have been expressed." Id. at 1160.

It is not fair to say that the dancers' restraints are self-imposed when the unconstitutional statute is responsible for placing the plaintiffs in the position of having to make this choice. The statute's creation of this choice causes irreparable injury when the result, as it is here, is the constraint of First Amendment expression.

The First Amendment right to free speech is "fragile" and "easily chilled." Dolan v. City of Tigard, 512 U.S. 374, 407 (1994) (internal quotation omitted). First Amendment freedoms are "so fundamental that the spectre of punishment, or the uncertainty created by a vaguely worded prohibition of speech, is injurious . . . ." Ruocchio v. United Transportation Union, Local 60, 181 F.3d 376 (3d Cir. 1999) (quoting Mallick v. International Brotherhood of Electrical Workers, 644 F.2d 228 (3d Cir. 1972) (also noting, in the context of standing, that "the possibility of future charges based on the challenged prohibitions, could have a substantial chilling effect on plaintiffs' . . . exercise of their free speech rights"). Once the unconstitutional nature of § 4-493(10) is taken into

23

account, it is clear that plaintiffs' free speech rights have been chilled under the statute's unconstitutional requirement that their performances meet a certain level of propriety.

## III.

For the foregoing reasons, I would reverse the order of the District Court denying plaintiffs' request for a preliminary injunction.



/s/ JANE R. ROTH
Circuit Judge